**Gerald FABIANO, Plaintiff,**

v.

**Merita A. HOPKINS, et al., Defendants.**

**No. CIV.A. 01–11554–PBS.**

United States District Court, D. Massachusetts.

Jan. 31, 2003.

306

Gerald Fabiano, Pierce, Davis, Fahey & Perritano, LLP, Boston, for Gerald Fabiano, Plaintiff.

Christine M. Roach, Roach & Carpenter, P.C., Boston, for Merita A. Hopkins, Defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

*Pro se* plaintiff Gerald Fabiano brings this action alleging that he was terminated from his employment as a litigator in the Corporation Counsel's office for the City of Boston in retaliation for filing a lawsuit in state court against the City Zoning Board of Appeal, in violation of his First Amendment rights. Plaintiff asserts claims under 42 U.S.C. § 1983 and the common law against defendants Merita A. Hopkins, Corporation Counsel, Kevin J. Joyce, Director of Government Affairs, and the City of Boston.

After hearing, the defendants' motion for summary judgment is **ALLOWED** with respect to the First Amendment claim. The Court remands the state claims.

### FACTUAL BACKGROUND

In June 1994, plaintiff was appointed as an Assistant Corporation Counsel for the City of Boston to serve as a senior litigation lawyer. He served as an at-will employee. The Government Affairs Division, where Fabiano worked, represented the City Zoning Board of Appeal, and Fabiano personally worked on two cases involving the Zoning Board. Defendant Kevin J. Joyce, the Director of Government Affairs, served as plaintiff's immediate supervisor from December 1995 through plaintiff's termination. Merita A. Hopkins was the Corporation Counsel.

During late 1996 and early 1997, Hopkins received reports from two members of her management team, Joyce and another, expressing concerns about Fabiano's case management skills, particularly with respect to his approach to settlement. This culminated in a meeting in June, 1997, which took several hours. There is a dispute over the content of the discussion. At the meeting, Hopkins and Fabiano disagreed over strategy in several cases.

In January 1998, plaintiff notified Joyce that he had initiated a *pro se* action appealing a decision of the City of Boston Zoning Board of Appeal, a client of the Law Department, in Superior Court. He was challenging the granting of a zoning variance to a restaurant located 100 feet from real estate, in which he had an ownership interest, on a residential street with limited parking. The variance permitted a sit-down restaurant near plaintiff's property to provide take-out services, which plaintiff claimed would even further diminish the parking supply. Plaintiff's mother, who owned a different abutting property, joined him in the action, as an abutter, and, like plaintiff, represented herself *pro se*. She also owned an interest in plaintiff's property.

At the time Fabiano notified Joyce of the litigation, the City had not yet been served with the suit. Joyce informed Fabiano that his actions presented a conflict of interest and strongly advised Fabiano to retain separate counsel. Joyce testified that Fabiano told him that he was representing himself *and* family members; Fabiano disputes this testimony, claiming he told Joyce he was only representing himself. According to Fabiano, Joyce became enraged, told Fabiano he had to pick what side he was on, and said this litigation violated MASS. GEN. L. ch. 268A, the state ethics law. After investigation the

City also learned that Fabiano had not in fact become one of the record owners of the property until after the original zoning decision had been made, and just prior to the running of the appeals period. The matter was reported to Hopkins.

After consulting with outside counsel, Hopkins believed that Fabiano's actions were "potentially in violation of state law, as well as state ethical rules governing the practice of attorneys." (Hopkins Aff. ¶ 19). Hopkins believed (perhaps incorrectly) that plaintiff represented his family in the action, because that is what Joyce told her. Fabiano claims he was only representing himself.

The City has published a brochure, *Introduction to Conflict of Interest Law for City of Boston Employees,* which has two applicable provisions:

**Acting on Behalf of Others**

**While you are a City employee, you may not act as agent or representative for anyone other than the City in connection with any matter involving the City.** For instance, you may not contact a City agency on behalf of a private individual, company, not-for-profit organization, group, association, or other special interest. You may not appear before a City agency on someone else's behalf. You may not allow your name to be used on documents which are submitted to a City board by someone else. You may not serve as spokesperson or otherwise represent anyone in connection with City business.

**Also, you may not be paid (or receive any other type of compensation), by anyone other than the City of Boston in relation to any matter that involves the City.**

.     .     .     .     .

*Special case:* **Family Members.** If you are an appointed employee, you are generally allowed to act as an agent for: members of your immediate family (yourself, your spouse, your parents, your siblings, your children, your spouse's parents, your spouse's siblings, and your spouses's children), or any person for whom you serve as guardian, executor, administrator, trustee or personal fiduciary, provided that:

   a.   the matter is not within your official jurisdiction as a City employee;

   b.   you have never personally participated in the matter while employed by the City; and

   c.   you get prior, written permission from your appointing authority (see the definition of "appointing authority" at the end of this brochure).

.     .     .     .     .

*Special case:* **Acting on your own behalf.** You are always allowed to represent yourself, and to state personal points of view. *However, you should always make it clear that you are acting on your own behalf, and not acting in any official capacity.* You may even represent yourself before the City agency you work for (but remember that you may not take any type of official action on a matter that affects you). (emphasis added).

Because he was only representing himself, plaintiff did not seek permission for self-representation or procure outside counsel. He believed this was permissible under the conflict of interest policy governing situations when an employee acted on his own behalf.[1]

Hopkins claims that she did not fire Fabiano for suing the City, but rather for

1.  In 1995, another Law Department attorney filed a *pro se* zoning appeal without repercussion, but she did not work for the Government Affairs Division.

the method by which he went about suing—his failure to follow city policy with respect to written disclosure and prior written approval, and "his inability and unwillingness to acknowledge the serious professional, ethical and practical problems created by his lawsuit." (Hopkins Aff. ¶ 21). She says this was, in her view, just one example of a long pattern of serious lapses in judgment in the management of his caseload. After meeting with him on May 22, 1998, Hopkins terminated him. She told him she lacked confidence in his judgment, and was chagrined that he had not consulted state statutes, the Board of Bar Overseers, the State Ethics Commission or *any* manager before entering his appearance against the City. Fabiano explained in his affidavit (although apparently not to her) that he was already familiar with the conflict rules because of his experience as a litigator.

Plaintiff's zoning appeal was ultimately resolved in his favor, by agreed judgment on February 18, 1999. Joyce, his supervisor, was the attorney who answered and handled the Complaint for the City.

## DISCUSSION

### I. Summary Judgment Standard

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed. R.Civ.P. 56(c)), *cert. denied*, 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990);

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36.

### II. The First Amendment

█ Plaintiff contends that his termination was in retaliation for his filing a lawsuit on a zoning matter, in violation of the First Amendment. Being a litigant in court, Fabiano contends, is an exercise of his right under the First Amendment to petition the government for a redress of grievances.

The First Circuit has recently summarized that to prevail on a First Amendment claim of this nature plaintiff, "as a public employee, must establish that (1) his expression involved matters of public concern; (2) his interest in commenting upon those matters outweighed the City's interests in the efficient performance of its public services; and (3) his protected speech was a substantial or motivating fac-

tor in the City's adverse employment actions." *Lewis v. City of Boston*, 02–CV–1495, 2003 WL 174887 at *7 (1st Cir. Jan.28, 2003); *see also Mullin v. Town of Fairhaven*, 284 F.3d 31, 37–38 (1st Cir. 2002); *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

▮ The First Amendment guarantees every citizen's right "to petition the Government for a redress of grievances." U.S. CONST. amend. I. Generally speaking, the First Amendment guarantees the fundamental right to file a lawsuit, as well as to engage in constitutionally protected speech. *See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."). "[R]etaliation by the government that is motivated, at least in part, by a lawsuit or constitutionally protected speech may violate the First Amendment and support an action under 42 U.S.C. § 1983." *Campagna v. Mass. Dep't of Envtl. Prot.*, 206 F.Supp.2d 120, 124 (D.Mass.2002).

▮ Nonetheless, defendants argue that a public employee who files a petition in his private capacity to address a quintessentially private matter does not engage in constitutionally protected conduct. "[A]bsolute First Amendment protection is not accorded to any grievance a public employee files against an employer, without regard to content." *Boyle v. Burke*, 925 F.2d 497, 505 (1st Cir.1991) (involving a claim of retaliation brought by police officers who filed a legal challenge to the city's policy on military reserve service).

▮ The key case in this area is *Connick v. Myers*, which held:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. at 147, 103 S.Ct. at 1690 (1983) (involving the discharge of an employee for circulating a questionnaire concerning internal office affairs). *Connick* requires the court to strike a balance between the speech rights of the employee as a citizen and the interests of the government as employer. *Id.* at 140, 103 S.Ct. at 1686. The Court must first decide whether the litigation at issue can be "fairly characterized as constituting speech on a matter of public concern." *Id.* at 146, 103 S.Ct. at 1690. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record." *Id.* at 147–48, 103 S.Ct. at 1690. Once plaintiff has demonstrated that he has engaged in litigation implicating matters of public concern, the government's "burden in justifying a particular discharge varies depending upon the nature of the employee's expression." *Connick*, 461 U.S. at 150, 103 S.Ct. at 1692. "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Id.* at 151–52, 103 S.Ct. at 1692. However, "a stronger showing may be necessary if the employee's speech more substantially involved matters of public concern." *Id.* at 152, 103 S.Ct. at 1692–93. The Supreme Court was careful to note that the First Amendment

does protect employee speech "where an employee speaks out as a citizen on a matter of general concern, not tied to a personal employment dispute, but arranges to do so privately." *Connick,* 461 U.S. at 148, n. 8. 103 S.Ct. at 1691 (citing *Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)). If "the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech, [the employee] most show that the protected expression was a substantial or motivating factor in an adverse employment action." *Tang v. Rhode Island Dep't of Elderly Affairs,* 163 F.3d 7, 11 (1st Cir.1998) (citing *O'Connor v. Steeves,* 994 F.2d 905, 913 (1st Cir.1993)).

█ Fabiano asserts that his litigation is constitutionally protected under *Givhan* because a petition challenging a zoning matter inherently involves an issue of public concern. Defendants argue that his appeal was a routine zoning challenge involving a private matter. The determination of public concern may require an inquiry into the employee's motive for the protected activity. In that endeavor, the Courts "examine the extent to which plaintiffs intended their [protected activity] to contribute to any 'public discourse,' or if it simply reflected personal [ ] concerns." *Mullin v. Town of Fairhaven,* 284 F.3d 31, 38 (1st Cir.2002). To be sure, many zoning disputes have both public and private dimensions. While parking congestion on Boston streets is a subject worthy of public attention and can involve valid safety and neighborhood concerns, here there was undoubtedly a strong private property interest as well. There is no evidence that the zoning appeal in this case was intended to, or did, contribute much to public discourse. Fabiano did not seek to inform the public of safety or environmental hazards created by parking congestion or a

breach of trust or wrongdoing by the Zoning Board. Rather, Fabiano's litigation touched on matters of public concern "in only a most limited sense." *Connick,* 461 U.S. at 154, 103 S.Ct. at 1693–94.

Fabiano argues that this case should not be pigeon-holed into the *Connick* rubric because he was engaging in speech wholly in a private capacity on his own time. *Connick* and its progeny, he points out, involved speech about private workplace grievances. In another context, this argument might carry more sway, but here Fabiano was suing the agency his employer represented. Thus, even if this zoning appeal involved speech by a private citizen on an issue relating to the public discourse, the city has the right to enforce reasonable conflict of interest rules under the *Connick* balancing test. The City emphasizes the disruption caused by Fabiano's maintaining a lawsuit against the very Board he and his colleagues represented on a daily basis. Indeed, the scenario of a supervisor and his subordinate at different counsel tables in Superior Court is at least worrisome, not to mention Woody–Allen like.

Plaintiff does not facially challenge the constitutionality of the City's conflict of interest policy. *See Flynn v. City of Boston,* 140 F.3d 42, 47 (1st Cir.1998) (identifying valid state interests including working relationships which necessitate personal loyalty and confidence); *Ross v. Clayton County, Georgia,* 173 F.3d 1305, 1310 (11th Cir.1999) (upholding conflict of interest policy against First Amendment challenge using the *Pickering* balancing test); *Keeffe v. Library of Congress,* 777 F.2d 1573, 1578–81 (D.C.Cir.1985) (upholding conflict of interest policy restricting political activity of public employee to guarantee appearance of impartiality); *Zora v. State Ethics Comm'n,* 415 Mass. 640, 651, 615 N.E.2d 180, 187 (1993) (up-

holding state ethics law against First Amendment challenge).

Instead, plaintiff argues that the City applied the wrong section of its conflict of interest policy to his *pro se* action against the Zoning Board of Appeal, and that it based his termination on an erroneous factual assumption (i.e., that he was representing his mother in the matter). Even if the city fired him based on the mistaken belief that he failed to comply with the conflict of interest policy, the City articulated a transcendent concern that Fabiano did not act with sufficient sensitivity to his own obligations ˙ as an attorney or the City's obligation to a client. Fabiano's duties as an attorney in a division that represents the Zoning Board implicates the conflict of interest rules of the Massachusetts Rules of Professional Conduct, as codified in Supreme Judicial Court Rule 3:07. *See e.g.* Rule 1.7 (Conflict of Interest: General Rule). Advance coordination could have facilitated mutually acceptable solutions to the ethical concerns. *See e.g., Baker v. Cox,* 974 F.Supp. 73, 77 (D.Mass. 1997) (permitting erection of a Chinese Wall as alternative to disqualifying entire office of attorney general where an attorney had previously represented an opposing party). The City also had fair concerns about the appearance that Fabiano would gain an unfair advantage in the litigation by representing himself. *See* MASS. GEN. L. ch. 268A, § 23(b)(3). There is no evidence that the content of the litigation was a motivating factor in his dismissal.

Even assuming that Fabiano's petition is constitutionally protected conduct because it involves a matter of public concern, the Court must balance that limited First Amendment concern with the valid workplace concern of the Corporation Counsel that Fabiano should have consulted with his supervisor before initiating this litigation, and sought to minimize any actual conflicts or appearance of conflicts.

### *ORDER*

The Defendants' Motion for Summary Judgment on all Federal claims is *AL-LOWED.* (Docket No. 20). All State Law claims are *REMANDED* without prejudice. (Docket No. 15).