# United States Court of Appeals
## For the First Circuit

No. 03-1444

GERALD FABIANO,

Plaintiff, Appellant,

v.

MERITA A. HOPKINS; KEVIN J. JOYCE; CITY OF BOSTON,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Howard, Circuit Judge,
Campbell, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

Gerald Fabiano, pro se, for appellant.
Christine M. Roach, with whom Roach & Carpenter, P.C., was on
brief for appellees.

December 9, 2003

**STAHL**, **Senior Circuit Judge**.  <u>Pro se</u> plaintiff-appellant Gerald Fabiano appeals from the district court's judgment in favor of his former employer, the Corporation Counsel's office of the defendant-appellee City of Boston.  Fabiano asserts that he was unlawfully terminated in retaliation for filing a lawsuit in state court against the City of Boston Zoning Board of Appeal, which was the Corporation Counsel's client.  The district court awarded summary judgment to the City and the individual defendant-appellees, holding that as a matter of law, Fabiano's termination did not violate the First Amendment.  We affirm the judgment below, albeit on different grounds than those set forth by the district court.

## I. Background

We present the facts in the light most favorable to Fabiano, as the party opposing summary judgment.  <u>See</u> <u>Sparks</u> v. <u>Fidelity Nat'l Title Ins. Co.</u>, 294 F.3d 259, 265 (1st Cir. 2002). In June 1994, Fabiano was appointed Assistant Corporation Counsel for the City.  He served as a senior litigation lawyer in the Government Affairs Division and was an at-will employee.  Defendant-appellee Kevin J. Joyce, the Director of Government Affairs, was Fabiano's immediate supervisor from December 1995 until his termination.  Defendant-appellee Merita A. Hopkins was the Corporation Counsel.

During late 1996 and early 1997, Hopkins received reports from Joyce and another manager expressing concerns about Fabiano's case

management skills, particularly with respect to his approach to settlement. In June, 1997, these concerns were discussed at a meeting attended by Fabiano and Hopkins.

In January, 1998, Fabiano informed Joyce that he had initiated a _pro se_ action appealing a decision of the City of Boston Zoning Board of Appeal ("Zoning Board") to the Superior Court. The Government Affairs Division represents the Zoning Board on appeals, and Fabiano had personally worked on two such cases during his tenure.

In Fabiano's _pro se_ appeal, he challenged the renewal of a zoning variance for a restaurant located one hundred feet from real estate in which he had an ownership interest.[1] Fabiano contended that a variance had never been initially granted, and that the renewal, issued in error, permitted a sit-down restaurant to provide take-out services, thus diminishing the limited parking supply on his residential street. Plaintiff's mother, who owned a different abutting property, joined him in the action. Like Fabiano, she represented herself.

When Fabiano notified Joyce of the litigation, Joyce immediately responded that his action in taking the appeal presented a conflict of interest and strongly advised Fabiano to

---

[1]After investigation, defendants learned that Fabiano had not become one of the record owners of the property until after the original zoning decision had been made, just prior to the running of the appeals period.

retain separate counsel. In the district court, Joyce testified that Fabiano told him that he was representing himself and family members, while Fabiano claimed he told Joyce he was only representing himself.[2] According to Fabiano, Joyce angrily told Fabiano that he had to pick which side he was on and said that the litigation violated Mass. Gen. L. ch. 268A, the state ethics law.

Notwithstanding the strong reaction of Joyce, Fabiano did not seek permission for self-representation or procure outside counsel. He believed that under the conflict of interest policy governing situations in which an employee acts on his own behalf, his action was permissible.

The matter was reported to Hopkins, who was told (apparently incorrectly) that Fabiano was representing his family as well as himself in the action. After consulting with outside counsel, Hopkins came to believe that Fabiano's actions were "potentially in violation of state law, as well as state ethical rules governing the practice of attorneys."

For a few months after Fabiano filed the Zoning Board action, Joyce regularly asked Fabiano about his trial schedule, something that he had never done before. On May 22, 1998, shortly after Fabiano reported that he had no trials scheduled, Hopkins

---

[2]Fabiano's complaint in the Zoning Board action indicates that he and his mother signed the document separately, each pro se. Fabiano did not list his Board of Bar Overseers number on his signature line.

terminated his employment. She did this while holding a copy of the Zoning Board complaint in her hand, telling Fabiano that she lacked confidence in his judgment and was dismayed that he had not consulted state statutes, the Board of Bar Overseers, the State Ethics Commission, or any manager before entering his appearance against the City.

Hopkins contended that she did not fire Fabiano for suing the City, but rather for his failure to follow city policy with respect to written disclosure and prior written approval of his lawsuit, as well as "his inability or unwillingness to acknowledge the serious professional, ethical and practical problems created by his lawsuit." She stated that the Zoning Board lawsuit was merely one more example of poor judgment with respect to his caseload.

After investigation, the City acknowledged that the variance decision had resulted from "inadvertent clerical error." Joyce answered and handled the matter on behalf of the City. On February 18, 1999, the zoning appeal was resolved in favor of Fabiano and his mother by agreed judgment.

In December 2001, Fabiano filed a complaint in the Massachusetts Superior Court asserting First Amendment claims against each defendant pursuant to 42 U.S.C. § 1983 as well as common law state claims. Defendants removed the case to federal court.

After a hearing, the district court allowed the defendants'

motion for summary judgment with respect to the First Amendment claims, and remanded the state claims to state court. Fabiano v. Hopkins, 245 F. Supp.2d 305, 312 (D. Mass. 2003). The district court held that Fabiano's litigation pertained to a matter of public concern "in only a most limited sense." Id. at 311 (quoting Connick v. Myers, 461 U.S. 138, 154 (1983)). Even if Fabiano's conduct were protected by the First Amendment, the court continued, the constitutional concern was outweighed by "the valid workplace concern of the Corporation Counsel that Fabiano should have consulted with his supervisor before initiating this litigation, and sought to minimize any actual conflicts or appearance of conflicts." Id. at 312. This appeal followed.

## II. Discussion

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rosenberg v. City of Everett, 328 F.3d 12, 17 (1st Cir. 2003) (citing Fed. R. Civ. P. 56(c) (2003)). We review the district court's award of summary judgment de novo, construing the record in the light most favorable to Fabiano and resolving all reasonable inferences in his favor. Id.

We may affirm the district court's entry of summary judgment on any ground revealed by the record. Houlton Citizens' Coalition

v. <u>Town of Houlton</u>, 175 F.3d 178, 184 (1st Cir. 1999).  Although the district court ruled only on the merits of Fabiano's First Amendment claims, we take a somewhat different approach, holding that neither the City of Boston nor the individual defendants may be liable pursuant to 42 U.S.C. § 1983.

## A.    Municipal liability pursuant to 42 U.S.C. § 1983

In an action pursuant to 42 U.S.C. § 1983, there can be no municipal liability under a respondeat superior theory.  <u>Monell</u> v. <u>Dept. of Soc. Servs.</u>, 436 U.S. 658, 690-95 (1978).  Rather, to establish liability against the City, Fabiano must prove deprivation of a constitutional right by means of "the execution of the government's policy or custom."  <u>City of Canton</u> v. <u>Harris</u>, 489 U.S. 378, 385 (1989); <u>see also</u> <u>Monell</u>, 436 U.S. at 690-94.

Hopkins is the relevant policymaker for the purposes of our § 1983 analysis, as the decision to terminate Fabiano's employment ultimately resided with her.  Fabiano does not point to any relevant City "policy" beyond the mere fact that Hopkins decided to fire him.  Nor does he assert that the City has made a well-settled practice of punishing attorneys who have taken legal action against it or otherwise exercised their First Amendment rights.[3]

---

[3]In 1995, another Law Department attorney filed a <u>pro se</u> zoning appeal, but she apparently suffered no adverse employment consequences.  Moreover, this attorney did not work for the Government Affairs Division and was not supervised by Hopkins, the policymaker at issue.  Hence, this incident, taken together with Fabiano's termination, lacks sufficient commonality to form a pattern or practice.

Absent evidence of an unconstitutional municipal policy, a single incident of misconduct cannot provide the basis for municipal liability under § 1983. Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Such a result would be the equivalent of imposing respondeat superior liability upon the municipality. Id. Fabiano's termination stands alone as a unique incident of alleged misconduct and does not, as a matter of law, suffice to ground § 1983 liability against the City.

**B.    Individual liability and qualified immunity**

The individual defendants, Hopkins and Joyce, assert an affirmative defense of qualified immunity. Qualified immunity is intended to shield public officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001).

In assessing this defense, we consider a sequence of questions: (1) whether the facts as alleged make out a constitutional violation; (2) whether that right was clearly established; and (3) whether a similarly situated reasonable official would have understood that her conduct violated clearly

-8-

established law.  <u>Savard</u> v. <u>Rhode Island</u>, 338 F.3d 23, 27 (1st Cir. 2003).  We are required to take these questions in this order, as the development of the law of qualified immunity is best served by the judicial exposition of the first two inquiries.  <u>Saucier</u>, 533 U.S. at 201; <u>see also</u> <u>Dirrane</u> v. <u>Town of Brookline</u>, 315 F.3d 65, 69 (1st Cir. 2002).

## 1. First Amendment violation

Accordingly, we first consider whether Fabiano's allegations set forth a First Amendment violation.  As an initial matter, every citizen has the right "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The right of access to the courts is an established aspect of this right.  <u>Bill Johnson's Restaurants, Inc.</u> v. <u>NLRB</u>, 461 U.S. 731, 741 (1983).

In <u>Mullin</u> v. <u>Town of Fairhaven</u>, 284 F.3d 31, 37-38 (1st Cir. 2002), we recently described the three elements a public employee must show to prevail on a First Amendment claim against his employer:

> First, we must determine whether the speech at issue involves "matters of public concern."  <u>Connick</u> v. <u>Myers</u>, 461 U.S. 138, 147-48 (1983).  If it does not, then its First Amendment value is low, and a "federal court is not the appropriate forum in which to review the wisdom" of internal decisions arising therefrom.  <u>Id.</u> at 147. Second, if the speech does pertain to matters of public concern, the court must, under the Supreme Court's decision in [<u>Pickering</u> v. <u>Bd. of Educ.</u>, 391 U.S. 563 (1968)], balance the strength of plaintiffs' and the public's First Amendment interests against "the strength of the countervailing governmental interest in promoting

-9-

> efficient performance of the public service the government agency or entity must provide through" its public officials . . .

(internal citations omitted). Third, Fabiano must show that his protected speech was a substantial or motivating factor in the City's decision to fire him. See id. at 38; Lewis v. City of Boston, 321 F.3d 207, 217 (1st Cir. 2003).

### a. Matter of public concern

In the first step of this analysis, whether Fabiano's lawsuit addressed a matter of public concern presents a very close question. We examine the entire record to assess the content, form, and context of his speech. See Connick, 461 U.S. at 147-48. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark -- and certainly every criticism directed at a public official -- would plant the seed of a constitutional case." Id. at 149.

In O'Connor v. Steeves, 994 F.2d 905, 913 (1st Cir. 1993), we noted that the specific factual circumstances of a case govern the extent to which we delve into a public employee's personal motives behind his speech. A case in which an employee expresses himself on a subject that is "clearly a legitimate matter of inherent concern to the electorate" may not require us to inquire further into his motives. Id. at 913-14.

> On the other hand, public-employee speech on a topic which would not necessarily qualify, on the basis of its

-10-

content alone, as a matter of inherent public concern (e.g., internal working conditions, affecting only the speaker and co-workers), may require a more complete <u>Connick</u> analysis . . . with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and, if so, whether the "form" of the employee's expression suggests a subjective intent to contribute to any such public discourse.

<u>Id.</u> at 914.

Fabiano contends that because his lawsuit involves zoning, it is inherently a matter of public concern under <u>O'Connor</u>. We agree that zoning relates to the public interest in a very broad sense. <u>See</u> <u>McElderry</u> v. <u>Planning Bd. of Nantucket</u>, 431 Mass. 722, 726, 729 N.E.2d 1090, 1093 (2000) (stating that purpose of zoning law is to "regulate the use of land to ensure the safety, convenience, and welfare of the inhabitants of municipalities"); <u>Carstensen</u> v. <u>Zoning Bd. of Appeals</u>, 11 Mass. App. Ct. 348, 356, 416 N.E.2d 522, 527 (1981) (noting that "the main purpose of zoning is to stabilize the use of property and to protect an area from deleterious uses . . .").

To use so broad a standard, however, would sweep nearly every public act under First Amendment protection. The specific nature of Fabiano's legal action -- whether a variance was correctly issued for a take-out restaurant on a residential street -- does not constitute the type of issue of inherent public concern that would truncate our analysis under <u>O'Connor</u>. His complaint cannot be said to engage the public interest on a large scale; it is more

-11-

akin in scope to a public employee speaking out on a workplace concern. See O'Connor, 994 F.2d at 914; compare with Mullin, 284 F.3d at 915 (holding that employee's whistleblowing concerning official misconduct by selectmen obviated the need for a threshold analysis of his dominant motive for speaking out); see also Brasslett v. Cota, 761 F.2d 827, 844 n.14 (1st Cir. 1985) (affording no apparent consideration to public employee's motive where fire chief's public commentary on fire protection plainly qualified as a matter of inherent public concern).

Accordingly, it is appropriate to inquire into Fabiano's motives for his Zoning Board lawsuit. We examine the extent to which Fabiano intended his lawsuit to "contribute to any 'public discourse,' or if it simply reflected personal or internal . . . concerns." Mullin, 284 F.3d at 38 (quoting O'Connor, 994 F.2d at 914). We note that Fabiano's "speech" differs in form from the more conventional expression at issue in the applicable case law, which involves written or spoken criticisms or complaints about workplace issues. See, e.g., Connick, 461 U.S. at 147-48; Mullin, 284 F.3d at 39; Alinovi v. Worcester Sch. Comm., 777 F.2d 776, 786-87 (1st Cir. 1985) (concluding that teacher who posted letters from school administration in an attempt to bring about a resolution of her disciplinary problem was motivated by a purely personal issue and did not implicate matter of public concern). Accordingly, we construe Fabiano's intent in the fact-specific context of his

-12-

litigation.

There is no doubt that Fabiano's lawsuit was motivated in large part by self-interest. As the owner of property abutting the restaurant granted the erroneous variance, he was directly affected by the renewed variance and the concomitant possibility of increased traffic. His complaint to the Zoning Board plainly sought to redress these matters. Indeed, Fabiano would not have had standing to bring suit had he lacked a personal interest and particularized harm. See Mass. Gen. Laws ch. 40A, § 16; Green v. Bd. of Appeals, 404 Mass. 571, 572, 536 N.E.2d 485, 585 (1989).

Nonetheless, we think that Fabiano's Zoning Board lawsuit had sufficient public dimension to ground a First Amendment claim. The record supports a conclusion that Fabiano's purpose in filing the lawsuit, in addition to vindicating his property rights, was to restore the integrity of the zoning process and remedy parking congestion. Fabiano and his mother had attempted, before and/or during their litigation, to point out the breakdown in the variance process that led to the improper renewal. These efforts ultimately were successful, resulting in an agreed judgment before the Zoning Board. Had Fabiano and his mother not acted in a timely matter to challenge the renewal, the Zoning Board's error would have become permanent. See Mass. Gen. Laws ch. 40A, § 17 (stating that action must be brought within twenty days after the decision has been filed).

Although this is a very close case, we think the form and context of Fabiano's expression indicates a subjective intent to contribute to public discourse. See O'Connor, 994 F.2d at 914. Hence, we conclude that he has, by a narrow margin, made a sufficient showing that his lawsuit addressed a matter of public concern.

b. Pickering balancing

The next step of our analysis of Fabiano's First Amendment right is to balance the strength of the relevant constitutional interests against the countervailing governmental interest in promoting efficient performance of the City's public service. See Pickering, 391 U.S. at 568. Albeit not an exact science, Pickering balancing "is necessary in order to accommodate the dual role of the public employer as a provider of public services and as a government entity operating under the constraints of the First Amendment." Rankin v. McPherson, 483 U.S. 378, 384 (1987). This balancing test is "particularized"; if the plaintiff's constitutional claim is relatively weak, as here, the government need show less to counter it. See Connick, 461 U.S. at 150, 152.

The City contends that Fabiano's conduct undermined the efficient internal workings of the department. Fabiano was a senior attorney responsible for counseling and representing agency clients, including the Zoning Board. In that position, he had an obligation to recognize the sensitive nature of his work. He

-14-

failed to seek advice or advance permission from his superiors to litigate against one of his clients and rebuffed Joyce's urging to seek outside counsel. Rather, he proceeded with his lawsuit, apparently heedless to the possibility of embarrassment to the Corporation Counsel's office or an appearance of impropriety. Fabiano's filing of the Zoning Board appeal, as well as his intransigence vis-a-vis his superiors following its disclosure, could be reasonably construed as disruptive.

Although the government's concerns are valid, they fall short of outweighing Fabiano's First Amendment interests in pursuing his zoning case. First, there is little evidence in the record that Fabiano's lawsuit disrupted the day-to-day functioning of his workplace. After Fabiano brought the matter to his supervisor's attention, defendants continued to employ Fabiano for several months while he litigated other matters. Until his termination, Fabiano was unaware of any response to his litigation on the part of the City other than the filing of an answer to the complaint.

We note also that ultimately there was no adversity between Fabiano's position and the City's position concerning the variance at issue. The City eventually admitted that the renewal was issued improperly and entered an agreed judgment. In that respect, Fabiano's successful attempt to redress the errors committed by the Zoning Board apparently did not conflict with the City's mission to deliver government services. Indeed, Fabiano arguably helped to

vindicate the public's interest in a fair and just review process. Cf. O'Connor, 994 F.2d at 916 (stating that a "strong public interest in disclosures supplemented [plaintiff's] relatively slight personal interest in speaking out . . . weighting the Pickering scale in favor of First Amendment protection against retaliation for [plaintiff's] speech").

Moreover, Fabiano's conduct arguably does not seem to have violated the City's internal policy as expressed in its publication Introduction to Conflict of Interest Law for City of Boston Employees. That manual provides, in relevant part:

Acting on Behalf of Others
    While you are a City employee, you may not act as agent or representative for anyone other than the City in connection with any matter involving the City. . . .

. . . . .

    Special case: Family Members. If you are an appointed employee, you are generally allowed to act as an agent for: members of your immediate family (yourself, your spouse, your parents, your siblings, your children, your spouse's parents, your spouse's siblings, and your spouses's children), or any person for whom you serve as guardian, executor, administrator, trustee or personal fiduciary, provided that:
a. the matter is not within your official jurisdiction as a City employee;
b. you have never personally participated in the matter while employed by the City; and
c. you get prior, written permission from your appointing authority (see the definition of "appointing authority" at the end of this brochure).

. . . . .

    Special case: Acting on your own behalf. You are always allowed to represent yourself, and to state personal points of view. However, you should always make it clear that you are acting on your own behalf, and not

<u>acting in any official capacity.</u> You may even represent yourself before the City agency you work for (but remember that you may not take any type of official action on a matter that affects you).

(Emphasis in original).

The section titled "Acting on your own behalf" appears to be relevant here. Although Joyce and Hopkins maintain they were told that Fabiano was representing his mother, Fabiano testified below that he told Joyce that he was only representing himself, and we must construe any disputes in his favor. <u>See</u> <u>Rosenberg</u>, 328 F.3d at 17. In fact, Fabiano's complaint in the Zoning Board action indicates that he and his mother signed the document separately, each <u>pro se</u>.

Applying the latter section of the manual, it does not seem that Fabiano committed a violation. Nothing in the litigation indicated that Fabiano was acting in an official capacity as counsel to the City when he filed suit, or that he took any official action on a matter affecting him.

We do not mean to suggest that Fabiano's conduct was proper or created no conflict of interest with his employer. Indeed, Fabiano's conduct appears to implicate the Massachusetts Rules of Professional Conduct, see Supreme Judicial Court Rule 3:07, at least to the extent that it may have created an appearance of impropriety. Nor can we condone the bull-headed manner in which Fabiano defied the stated and obvious concerns of his superiors. He proceeded with his <u>pro</u> <u>se</u> filing with no apparent regard for

their concerns.  Nonetheless, reluctantly we conclude that under the specific and unusual facts of this case, the City's interest in an efficient workplace did not trump Fabiano's First Amendment right to pursue his zoning suit.

### c.  Causation

In the third and final step in establishing a First Amendment violation, Fabiano must show that his protected speech was a substantial or motivating factor in the City's decision to fire him.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Mullin, 284 F.3d at 38.  This requirement is satisfied.  Hopkins was holding a copy of the Zoning Board complaint in her hand when she fired Fabiano, and in her affidavit below she cited the lawsuit as one of several reasons underlying the termination (although she took pains to emphasize that the method by which Fabiano sued the City, not the suit itself, was the cause).  It may well be that a factfinder would determine that Fabiano's deficiencies in professional judgment, not the lawsuit itself, was the primary cause of the firing.  But, taking all inferences in favor of Fabiano, as we are bound to do, we conclude that he has adduced sufficient evidence of causation for purposes of our review.

### 2.  "Clearly established" right

Having concluded that Fabiano's allegations arguably suffice to state a First Amendment claim, we proceed to the second step of

-18-

the qualified immunity analysis and consider whether Fabiano's First Amendment right was "clearly established." Saucier, 533 U.S. at 201-02. The purpose of this requirement is "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Id. at 206; see also Hope v. Pelzer, 536 U.S. 730, 739 (2002).

The nature of Fabiano's First Amendment claim makes it extremely difficult for him to prove that this right was clearly established at the time his employment was terminated. "Because Pickering's constitutional rule turns upon a fact-intensive balancing test, it can rarely be considered 'clearly established'" for purposes of qualified immunity. O'Connor, 994 F.2d at 917 n.11 (quoting Bartlett v. Fisher, 972 F.2d 911, 916-17 (8th Cir. 1992)(internal quotation marks omitted)); see also Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir. 1992) ("if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly established,' at least in the absence of closely corresponding factual or legal precedent").

The facts of this case do not present the sort of unusual circumstances that would support the finding of a clearly established right notwithstanding Pickering. As we noted supra, there is a very close question as to whether Fabiano's allegations made out a constitutional claim. Fabiano's supervisors had, on at

least one formal occasion, stated a basis for distrusting his judgment, see Dirrane, 315 F.3d at 71, and were reasonably concerned about the potential conflict of interest (and the appearance of such conflict) that his Zoning Board lawsuit entailed.  We cannot say that they knew or should have known that firing Fabiano under these circumstances was unlawful. Accordingly, we conclude that Joyce and Hopkins are entitled to qualified immunity on Fabiano's First Amendment claims.

We **affirm** the judgment of the district court as to all defendant-appellees.