# United States Court of Appeals
## For the First Circuit

No. 07-1425


RAMÓN ROSADO-QUIÑONES; LILLIAM RODRÍGUEZ-LÓPEZ,

Plaintiffs, Appellants,

v.

PEDRO A. TOLEDO, Superintendent of the Police of Puerto Rico;
INSPECTOR ANDRÉS ROSA-RODRÍGUEZ, Former Director of the C.I.C. in
Mayagüez; LT. JORGE VELÁZQUEZ-ALMODÓVAR, Director of the Robbery
Unit of the C.I.C. of Mayagüez; COLONEL JOSÉ L. CALDERO-LÓPEZ,
Auxiliary Superintendent for Criminal Investigation for the
Island of Puerto Rico; COMMANDER HÉCTOR AGOSTO-RODRÍGUEZ, In
charge of the Police of Mayagüez,

Defendants, Appellees.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]


Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Lynch, Circuit Judge.

Raúl Barrera-Morales with whom Jesús M. Hernández Sánchez
and Hernández Sánchez Law Firm were on brief for appellants.
Irene S. Soroeta-Kodesh, Assistant Solicitor General, with
whom Salvador J. Antonetti Stutts, Solicitor General, and Mariana
D. Negrón Vargas, Deputy Solicitor General, Department of
Justice, were on brief for appellees.

June 4, 2008

**LYNCH**, **Circuit Judge**. Ramón Rosado-Quiñones, an officer in the Puerto Rico Police Department ("PRPD" or "Department"), brought an action against Department officials under 42 U.S.C. § 1983 seeking over $10 million in damages. He claimed that his superiors violated his First Amendment rights when they assigned him to new job duties, allegedly in retaliation for his having filed a lawsuit against them in a local court. Rosado also asserted a due process claim that he was denied notice and a hearing about his changed job responsibilities, as well as pendent claims under Puerto Rico law. The defendants moved for summary judgment, which the district court allowed as to all federal claims; the Puerto Rico law claims were dismissed without prejudice. Rosado appeals. We affirm.

## I.

The undisputed record shows the following. Rosado was a veteran of the Puerto Rico Police Department, having been assigned since 1985 to the specialized, plainclothes Criminal Investigation Corps ("CIC") in Mayagüez. The Department transferred Rosado in February 2005 to an assignment as a uniformed beat officer on the undesirable 4:00-a.m.-to-noon shift, which produced this lawsuit. This transfer followed several events.

In December 2002, criminal charges of disturbing the peace were filed against Rosado. Pursuant to PRPD policy, Rosado was forced to surrender temporarily his firearm. A Commonwealth

judge found probable cause for the criminal charges and, in January 2003, scheduled Rosado for trial. Rosado was found not guilty in August 2003. The PRPD continued to employ Rosado during the period of the pending charges, his disarmament, and all times relevant to this suit.

Rosado, despite requests that his firearm be returned, was not rearmed by the Department until July 2004. On September 14, 2004, Rosado told the Superintendent of Police he intended to sue the Department over his prolonged period of disarmament. Following Rosado's notice, the Department initiated an internal inquiry. On November 10, 2004, Rosado's superiors at the CIC submitted a report to the PRPD commander of the Mayagüez region.

On November 17, 2004, Rosado filed suit in the Commonwealth courts against the Commonwealth, the Department of Justice, and a number of police officials. These officials included the commander, three lieutenants and two sergeants. In his Superior Court complaint, Rosado alleged a "pattern of labor harassment" by the PRPD against him. Rosado alleged that after he had been charged with disturbing the peace and his firearm had been confiscated, the sergeant who took the gun "claimed that [Rosado] had an emotional condition that was affecting the performance of his duties." After Rosado was acquitted of the charges, two separate sergeants in the Department reiterated their concerns about his emotional condition, and one informed him that only the

police psychiatrist could return Rosado's firearm. According to Rosado's Superior Court complaint, the latter sergeant "opposed his being rearmed deliberately in order to do damage to [Rosado], requiring for no reason at all that [Rosado] be evaluated by the Puerto Rico Police psychiatrist, which is an action that in and of itself is illegal." The complaint goes on to acknowledge that Rosado eventually did undergo a psychiatric evaluation on June 28, 2004, and was rearmed in July.

Rosado's complaint in the Puerto Rico court also alleged that in spite of his past job performance and his acquittal of the criminal charges, the Department's Office of Public Integrity advised that Rosado be suspended without pay for ninety days, although that suspension did not actually occur.[1] Rosado's complaint requested damages of $500,000.

Defendants put into evidence three reports about Rosado's inappropriate conduct that were written before Rosado filed suit in late 2004. There had been an incident on January 24, 2003, which was memorialized in a January 28, 2003 memo from Lieutenant Nelson Fonseca Rossy, Deputy Director of the Mayagüez CIC, to Captain Héctor Agosto Rodríguez, Director of that unit. The memo reported that Rosado defied the CIC's official start time. When admonished, Rosado questioned the authority of his superior and said he was

---

[1] The CIC informed Rosado on December 8, 2004 that he would be suspended without pay for fifteen days. On December 20, Rosado objected to the suspension, and the suspension never took place.

being persecuted. Fonseca informed Rosado that he must get his "persecution complex out of his head" since he was not being persecuted.

Fonseca reported another instance of Rosado's inappropriate conduct that occurred on December 3, 2003. Fonseca described both a specific incident in which Rosado addressed Fonseca "disrespectfully, arrogantly, and defiantly," and a continuing pattern of disrespect by Rosado toward his superior. The report noted that "this officer suffers from a persecution complex and his conduct rebuffs supervision."

Sergeant Pedro Matos Fortuna, Head of Administration for the Mayagüez CIC, also reported Rosado's actions on December 3, 2003. Matos complained that Rosado had addressed him "in a hostile, disrespectful and derogatory manner, in contempt of the position I hold at the agency and especially towards the criminal investigation corps." The report concluded that based on this and two prior incidents in January 2003, Rosado lacked respect for his superiors and would not tolerate discipline. The report recommended sending Rosado to professional improvement courses.

Internal disciplinary reports regarding Rosado's conduct continued to be made after Rosado filed his first lawsuit and were consistent in theme with the prior reports. A report dated January 26, 2005 and entitled "Act of Insubordination" was written by Lieutenant Jorge Velázquez Almodóvar, the Head of the Robbery

Section of the Mayagüez CIC. The report recounted a specific incident in which Rosado objected to signing a receipt reflecting the fact that he possessed a bulletproof jacket. Rosado also refused to answer questions from Velázquez regarding a shooting incident. Velázquez reported that Rosado disobeyed legal orders and questioned authority. The report concluded that Rosado had disqualified himself from working in the CIC. The report further noted that Rosado's attitude spread unease among the department and prevented other officers "from doing their job to the best of their abilities." Velázquez requested an administrative investigation into Rosado and further requested that Rosado be transferred out of the CIC.[2]

The CIC Director, on February 1, 2005, agreed with the recommendation that Rosado be transferred to another office.

On February 9, 2005, the Department transferred Rosado from the CIC to the Field Operations unit. Rosado's new assignment was that of uniformed police officer, the lowest rank in the Department. Rosado's salary was not reduced. Rosado intended to retire from the PRPD once he became eligible in January 2007.

On January 27, 2006, Rosado filed a damages suit in federal court in Puerto Rico. Rosado's federal complaint alleged

---

[2]  The January 26 memo also complained that Rosado solved crimes at a lower rate than others and cited an intra-departmental minimum case-resolution rate. Rosado disputes that rate. In our view, this dispute is immaterial.

that the PRPD violated his due process rights when it demoted him without a hearing. The complaint also alleged that the transfer violated the First Amendment because it was ordered in retaliation for Rosado's previous filing of a complaint in Puerto Rico court. The complaint also included a claim under Puerto Rico law. Rosado sought damages of $10 million for his constitutional claims and $100,000 for his state law claim.

Defendants moved for summary judgment on December 7, 2006. Rosado filed an affidavit in opposition, in which he denied the conclusion in the January 26, 2005 report that he was insubordinate and said he "was only exercising my right to free speech." As proof that he was not insubordinate, Rosado claimed he was not actually investigated. He did not dispute that his supervisors had concluded he was insubordinate and documented their concerns to the command staff. Nor did Rosado dispute the facts stated in the internal disciplinary memoranda detailing his actions, although he disputed the contention that he had been insubordinate.

The district court granted the defendants' motion on February 5, 2007. Rosado Quiñones v. Toledo Davila, No. 06-1113, 2007 WL 438770 (D.P.R. Feb. 5, 2007).

II.

We review the district court's ruling de novo, taking the facts and all reasonable inferences in the light most favorable to

Rosado.  Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007).

As to the federal due process claim, the district court correctly held that because Puerto Rico law does not recognize any property interest in the performance of particular job functions in the course of an employee's continued employment, there was no constitutionally protected interest requiring a due process hearing.  Rosado Quiñones, 2007 WL 438770, at *5 (citing Rosado de Velez v. Zayas, 328 F. Supp. 2d 202, 212 (D.P.R. 2004)).  We affirm the district court's conclusion on the due process claim.

The district court's opinion then treated Rosado's First Amendment claim as a free speech claim by a public employee and analyzed the claim under a three-part test:

> (1) whether the speech involves a matter of public concern; (2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff.

Jordan v. Carter, 428 F.3d 67, 72 (1st Cir. 2005) (quoting Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004)).  See generally Connick v. Myers, 461 U.S. 138 (1983); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); Pickering v. Bd. of Educ., 391 U.S. 563 (1968).  This test has since been refined, in ways not

germane here, in Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). See Curran v. Cousins, 509 F.3d 36, 44-45 (1st Cir. 2007).

The district court did not reach the second and third prongs of the test, because it found that Rosado's November 2004 complaint in Puerto Rico Superior Court did not address a matter of public concern. The court held that the complaint (which alleged harassment by fellow employees and delay in rearmament) was "a classic example of speech concerning internal working conditions affecting only the speaker and co-workers." Rosado Quiñones, 2007 WL 438770, at *5. We agree.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48. The content of Rosado's speech, as embodied by the allegations in his original Superior Court complaint, is dispositive here. That complaint, replete with implications that PRPD personnel held personal animosity toward Rosado, does not even approach matters of inherent public concern in the context of law enforcement, such as "official malfeasance, abuse of office, and neglect of duties." Curran, 509 F.3d at 46. Rosado's claims of "labor harassment" do not implicate the ability of PRPD personnel to carry out their responsibility to the public, i.e., the provision of competent law enforcement services. Cf. Davignon v.

-10-

Hodgson, --- F.3d ----, 2008 WL 1822375, at *6-8 (1st Cir. Apr. 24, 2008).

The speech for which Rosado claims protection here recalls the Supreme Court's admonition that:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick, 461 U.S. at 147. It is clear on this record that Rosado's first lawsuit did not constitute speech on a matter of public concern, and as such, he has no First Amendment free speech challenge to his transfer out of the CIC.

Rosado's brief on appeal argues summarily that the cases on which the district court relied are distinguishable and that this case is different because "the area of free speech involved is the filing of a law suit." Rosado merely recites language from NAACP v. Button, 371 U.S. 415, 429 (1963) ("[T]he First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion."), and United Mine Workers, District 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967) ("[T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights."). However, he presents no further arguments to

-11-

suggest how these broad principles could or should alter the established Pickering/Connick/Mt. Healthy framework for assessing public employees' claims of retaliation for First Amendment activity. Rosado has not even attempted to argue that the right to file a court complaint is entitled to more protection under the First Amendment than other methods of expressing grievances with public employers.

The cases cited by Rosado do not carry the weight he assigns them. United Mine Workers involved the different issue of whether members of a union "had a right, protected by the First and Fourteenth Amendments, to join together and assist one another in the assertion of their legal rights by collectively hiring an attorney to handle their claims." 389 U.S. at 221. Button involved a similar issue about the right of NAACP staff attorneys to provide legal services to litigants whose cases comported with the association's institutional goals. 371 U.S. at 419-26. Both cases involved attempts by a state to interfere with the rights of organizations under the First and Fourteenth Amendments to employ attorneys for purposes of vindicating legal rights related to their associational purposes. Those interests are simply not involved in this case.

If there is a question of law about whether there is added First Amendment protection for public employees' filing of lawsuits against their employers on matters in which the public has

no interest, resolution of that question will await a different case.  In the absence of any developed argument on the point, the question is not before us.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Even if this argument were not waived -- and it was -- it would likely fail on the merits.  We have examined our precedent in Powell v. Alexander, 391 F.3d 1 (1st Cir. 2004), and Fabiano v. Hopkins, 352 F.3d 447 (1st Cir. 2003), not cited by plaintiff to either the district court or this court.  Powell acknowledges, in the public employment context, that under the First Amendment, there is both a free speech aspect and a right to petition aspect to claims of retaliation against the filing of lawsuits.  Id. at 16-17.  Rosado never made that distinction clear to the district court.  Notwithstanding the presence of a right to petition claim in Powell, this court applied the classic Pickering/Connick/Mt. Healthy analysis.  391 F.3d at 17.  In Fabiano, this court applied Pickering and its progeny to a claim of retaliation for exercising the right to petition by a former city employee who sued a city agency.  352 F.3d at 453.

In Powell, we upheld an award against a public employer found to have retaliated against an employee who filed lawsuits alleging race discrimination.  391 F.3d at 5-7.  The subject matter

-13-

of the civil rights suit there was plainly a matter of public concern. Further, statutory policy under Title VII prohibits retaliation for the filing of race discrimination claims. Significantly, the defendants in Powell never argued either that the plaintiff's complaints alleging race discrimination were frivolous or that they did not address matters of public concern. See 391 F.3d at 17, 20.

By contrast here, the matter of the timing or manner by which the PRPD rearmed Rosado raises no constitutional or public policy concerns. And there is no apparent statutory protection against retaliation for the filing of Rosado's lawsuit. Rosado's lawsuit does not involve matters of interest to the public.

We note there is no absolute First Amendment right to file lawsuits. See Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 743 (1983) ("[S]ham litigation . . . does not come within the first amendment right to petition."). The filing of a meritless lawsuit is subject to sanctions, including the award of attorneys' fees. See, e.g., Fed. R. Civ. P. 11.

We have reviewed the summary judgment papers. Even if we were to assume there was some form of First Amendment interest in protecting the mere filing of Rosado's lawsuit, which did not address a matter of public concern, such an interest is outbalanced by the PRPD's interests. Those interests here include ensuring the emotional stability of officers to whom the Department gives arms,

curbing insubordination, and being able to respond to a request from an officer's superiors that he be transferred because of a pattern of repeated disrespect for and refusal to take commands from his supervisors.  The decision to transfer, made by the command staff in light of reports it received, outweighs any First Amendment interest in filing a lawsuit the content of which is not, under <u>Connick</u>, protected by the First Amendment.

The judgment is affirmed.


**Dissenting Opinion Follows**

**TORRUELLA**, <u>Circuit Judge</u> **(Dissenting in part)**.  Finding that Rosado-Quiñones waived his argument that the First Amendment protects his filing of a lawsuit, the majority affirms the grant of summary judgment to appellees.  I cannot agree.  Rosado-Quiñones sufficiently developed his argument alleging a violation of his First Amendment right of access to the courts.  I would therefore decide the issue that the majority refuses to confront, and would hold that Rosado-Quiñones raised it with sufficient clarity and correctness to survive the appellee's motion for summary judgment.

First of all, Rosado-Quiñones did not waive the argument that he has a First Amendment right of access to the courts for redress of his grievances.  He argued in his original complaint that he was transferred and demoted "due to the fact that [he] had filed a damage claim."  This is clearly an argument that the First Amendment protects his right of access to the courts.  His argument was in no way perfunctory.  Rosado-Quiñones did not "merely . . . mention a possible argument in the most skeletal way."  <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1990).  He passed the threshold of fulfilling his "obligation 'to spell out [his] arguments squarely and distinctly.'"  <u>Rivera-Gómez</u> v. <u>de Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988) (quoting <u>Paterson-Leitch Co.</u> v. <u>Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 990 (1st Cir. 1988)).

In the brief he filed with this court, Rosado-Quiñones renews the argument he made in his opposition to summary judgment.

-16-

In distinguishing his case from Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138 (1983), among others, Rosado-Quiñones makes clear that "the area of free speech involved is the filing of a law suit." He quotes NAACP v. Button, 371 U.S. 415, 429 (1963), for the proposition that "[t]he right to file a law suit is a form of communication embraced by the First Amendment." He makes the same argument in the brief he filed before this court. He cites Button and United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n, 389 U.S. 217, 222 (1967), for no other reason than to argue that he has a First Amendment right to file a lawsuit. While I agree with the majority that Button and United Mine Workers also involved other issues, those other issues are not germane to his argument. The majority attempts to cast aside these cases by saying that the cases "do not carry the weight [Rosado-Quiñones] assigns them." Slip op. at 12. I disagree. That they dealt with other issues does not take away from the fact that they, and we, have held that the First Amendment encompasses the right of access to courts. See Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003) ("As an initial matter, every citizen has the right 'to petition the Government for a redress of grievances.' U.S. Const. amend. I. The right of access to the courts is an established aspect of this right." (citing Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983))).

The Pickering/Connick/Mt. Healthy line of cases is the wrong analytical framework in which to view Rosado-Quiñones's claim. As he made clear in his brief and at oral arguments, those cases dealt with free speech; his claim deals with the First Amendment right to file a lawsuit. This right is distinct from the right to distribute a questionnaire at work, Connick, 461 U.S. at 140-41; the right to comment on a radio station about the substance of a memorandum issued by a public school principal, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 274 (1977); or the right of a teacher to send a letter to a local newspaper criticizing the school board, Pickering, 391 U.S. at 564. Those claims involved a different kind of First Amendment right than the one asserted by Rosado-Quiñones. In Powell v. Alexander, 391 F.3d 1 (1st Cir. 2004), we said that the plaintiff's "filing of his 1991 lawsuit was an exercise of his First Amendment right to petition the government for redress, and that in retaliating against him for the filing of that lawsuit [the City Solicitor] risked violating his right under the Constitution." Id. at 20. Rosado-Quiñones claims that he was retaliated against for the same reason. "'[O]ur constitutional system gives every citizen the right to seek redress in the courts . . . without fear that recourse to the law will make that citizen a target for retaliation." Id. at 16 (citation omitted) (second alteration in original).

Rosado-Quiñones filed a lawsuit because he claimed that he was wronged by a governmental actor. "'[G]oing to a judicial body for redress of alleged wrongs . . . stands apart from other forms of action directed at the alleged wrongdoer.'" Bill Johnson's Restaurants, 461 U.S. at 741 (citation omitted) (second alteration in original). Were we to require governmental employees to demonstrate that their lawsuits were matters of public concern as a prerequisite to constitutional protection against retaliation for exercising this right, we would be placing an unwarranted and unconstitutional burden on them that is not placed on other citizens, merely by virtue of their status as public employees. Cf. id. at 742 ("If the Board is allowed to enjoin the prosecution of a well-grounded state lawsuit, it necessarily follows that any state plaintiff subject to such an injunction will be totally deprived of a remedy for an actual injury.").

I agree with the majority that the First Amendment does not protect against sham lawsuits. See slip op. at 14. Indeed, "[t]he first amendment interests involved in private litigation . . . are not advanced when the litigation is based on intentional falsehoods or on knowingly frivolous claims." Bill Johnson's Restaurants, 461 U.S. at 743. But there is a difference between frivolous litigation and a lawsuit that has a "reasonable basis in fact or law." Id. at 748. The correct legal framework in which to view Rosado-Quiñones's lawsuit is to look at whether his suit has

such a reasonable basis. At the summary judgment stage, courts should merely examine whether or not a plaintiff is "able to present the [court] with evidence that shows his lawsuit raises genuine issues of material fact." Id. at 745-46. Summary judgment for a case such as this one should not be granted unless the "plaintiff's position is plainly foreclosed as a matter of law or is otherwise frivolous." Id. at 747. The district did not make either finding below, nor can we reach such a conclusion on the record before us.

Rosado-Quiñones filed his original lawsuit in the Commonwealth courts on November 17, 2004, and he was transferred and demoted on February 5, 2005. He argues that he was transferred and demoted because he filed a lawsuit against the Superintendent of Police of Puerto Rico and other defendants. His lawsuit is not frivolous on its face, nor is it plainly foreclosed as a matter of law. There is enough temporal proximity between those events that a reasonable jury could determine that Rosado-Quiñones was retaliated against because he filed a lawsuit against the Police Department. See Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) ("'[T]emporal proximity' between appellant's allegations of discrimination in June 2002 and his termination in August 2002 is sufficient to meet the relatively light burden of establishing a prima facie case of retaliation." (citing Pomales v. Celulares Telefónica, Inc., 446

-20-

F.3d 79, 85 (1st Cir. 2006))).  His allegation that he was retaliated against because he filed a lawsuit against the Police Department presents a genuine issue of material fact that should be decided by a jury.  Accordingly, I would reverse the grant of summary judgment and give Rosado-Quiñones his day in court.