# United States Court of Appeals

## For the First Circuit

---

No. 01-2523
No. 01-2613

JOHN B. DIRRANE,

Plaintiff, Appellant/Cross-Appellee,

v.

THE BROOKLINE POLICE DEPARTMENT; TOWN OF BROOKLINE;
and DANIEL C. O'LEARY, in his official capacity
as Chief of Police,

Defendants, Appellees,

---

DANIEL C. O'LEARY, in his individual capacity;
THOMAS KEAVENEY; and THOMAS HEAVEY,

Defendants, Appellees/Cross-Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Boudin, Chief Judge,

Gibson,[*] Senior Circuit Judge,

and Torruella, Circuit Judge.

---

Eric S. Maxwell for plaintiff.

---

[*]Honorable John R. Gibson, of the Eighth Circuit, sitting by
designation.

Lisa M. Asiaf with whom Paul V. Kelly and Kelly, Libby & Hoopes, P.C. were on brief for defendants, appellees, cross-appellants Daniel C. O'Leary, Thomas Keaveney and Thomas Heavey.

David Lee Turner, Office of Town Counsel, with whom Jennifer Dopazo was on brief for defendants, appellees the Brookline Police Department, the Town of Brookline and Daniel C. O'Leary.

———————————

December 31, 2002

———————————

**BOUDIN**, <u>Chief Judge</u>.  This case began when John Dirrane, a police officer in the Brookline Police Department, brought a civil action to recover for alleged retaliation against him for reporting abuses in the police force, primarily within his own unit.  Certain of the individual defendants counterclaimed for defamation.  The district court ultimately dismissed all claims--some on a motion to dismiss and some on summary judgment--and both sides have appealed.

Dirrane joined the Brookline police force in 1980 and, in 1986, joined the Identification Unit ("ID Unit") of the Detective Division.  The ID Unit deals with photographs, fingerprints, and the like.  Dirrane's immediate supervisor was Sergeant Thomas Heavey.  In the early years, the head of the Detective Division was Captain Hayes; Hayes was succeeded by Captain Thomas Keaveney.  The Chief of Police in Brookline was Howard Brackett until 1995 and then Daniel O'Leary.

According to Dirrane, work increased in the ID Unit beginning in the early 1990s and thereafter Heavey and the other officer in the unit engaged in a continuing array of abuses. Dirrane complained repeatedly to Heavey and, when rebuffed, took his complaints on a number of occasions to Keaveney, Hayes, and O'Leary.  Dirrane's complaints ranged from minor to quite serious. His initial complaints, which started in 1992, were relatively minor; he claimed that certain officers were playing cards during

work hours, that his supervisors had improperly waived firearm licensing requirements, and that the accounting safeguards in his unit were inadequate. He then started to make more serious allegations charging Heavey and the other officer in the unit with falsifying fingerprint reports and destroying fingerprint evidence. He alleged that Heavey instructed him to falsify reports as well. He also continued to make less serious complaints, objecting to the manner in which evidence was stored and logged in the unit.

In Dirrane's view, these senior figures promised to look into matters but did very little. By contrast, according to the defense, Keaveney and O'Leary (Hayes is not a defendant and his role can be ignored) concluded that much of what Dirrane was alleging was wrong or could not be substantiated, that Dirrane was a continuing cause of friction and disruption, that he needed to talk with a department psychologist, and (ultimately) that he ought to work somewhere else in the department.

In March or April 1997, Keaveney changed Dirrane's work hours from 6 a.m. to 2 p.m. to a more normal schedule (8 a.m. to 4 p.m.) but one that Dirrane said conflicted with his wife's schedule and their need to care for their child. Under some stress, Dirrane then asked for a transfer to the Patrol Division or to another detective unit. On April 17, Internal Affairs officers asked Dirrane for his office keys and his firearm, and on April 18, O'Leary and Keaveney told Dirrane that he was moving to the Patrol

Division. Because of the stress, he was given ten-days leave before reporting.

During the next several months Dirrane received some psychological counseling while serving in the Patrol Division, and his firearm was returned to him about a year later. Dirrane continued to earn his ordinary police-officer income but claims to have suffered severe and permanent emotional trauma as a result of his overall experience. On April 7, 1999, just short of two years after his transfer, Dirrane brought the present action in state court.

In relevant part, Dirrane's complaint alleged a violation of the Massachusetts whistleblower statute (count II), Mass. Gen. Laws ch. 149, § 185 (2000), and a violation of his First Amendment rights subject to redress under 42 U.S.C. § 1983 (2000) (count III).[1] The pertinent remaining defendants are the Town of Brookline, Chief O'Leary and Captain Keaveney. Although Sergeant Heavey was also named, he did not cause the alleged retaliation complained of and on appeal Dirrane makes no effort to implicate him. The individual defendants counterclaimed against Dirrane for defamation based on statements Dirrane made to the press about the

---

[1]Count I set forth a comparable civil rights claim under state law and count IV claimed a civil conspiracy under state law. Dirrane does not distinguish between counts I and III; and he has not appealed from the district court's later dismissal of count IV for failure to state a claim.

matter. The defense removed the case to federal district court pursuant to 28 U.S.C. § 1441 (2000).

After removal to federal court and discovery, the district court in two successive orders dismissed all claims on both sides. The section 1983 damage claims against the individual officers were dismissed on qualified immunity grounds. As to the town, the court found no evidence whatsoever of any policy or custom that could warrant municipal liability under the Monell doctrine. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). The court also declined to order injunctive relief against the town or Chief O'Leary.

The district court dismissed the state whistleblower claim because concededly Dirrane had not provided the "written notice" that the court found to be required by the statute. The court also said, in the alternative, that neither the state nor the federal claims could succeed because Dirrane had himself requested the transfer. Finally, the court dismissed the counterclaims for defamation on the ground that the "malice" requirement could not be met. See N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). Cross-appeals followed.

1. We begin with Dirrane's attack on the dismissal of his First Amendment claims for damages against the individual officers. As to these claims, the district court assumed the truth of the allegations in the complaint; but it concluded that Dirrane

-6-

could identify no doctrine or precedent "clearly" establishing that the defendants' conduct under the circumstances alleged violated his constitutional rights. Accordingly, it held that the officers were protected against damages claims by the doctrine of qualified immunity. Our review on this issue is de novo. Carroll v. Xerox Corp., 294 F.2d 231, 237 (1st Cir. 2002).

Some First Amendment issues are governed by clear-cut rules, even though there may be close cases on the facts. E.g., Branti v. Finkel, 445 U.S. 507, 517 (1980) (political allegiance as a permissible job qualification for policymakers). But for alleged "disruptive speech" by government whistleblowers, the Supreme Court has adopted only a balancing test: the whistleblower is entitled to protection against retaliation if his speech interests, along with the public's interest in hearing the speech, outweigh the government's need to limit distractions, conserve resources, and maintain esprit in the workplace. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); Connick v. Myers, 461 U.S. 138, 150-51 (1983); Rankin v. McPherson, 483 U.S. 378, 388 (1987).

This uncertain standard implicates the companion legal doctrine of qualified immunity. Under section 1983, a government employee is immune to damages where a reasonable official could believe (the test is objective), albeit mistakenly, that his conduct did not violate the First Amendment. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). Immunity exists even where the

abstract "right" invoked by the plaintiff is well-established, so long as the official could reasonably have believed "on the facts" that no violation existed.  See <u>Suboh</u> v. <u>Dist. Attorney's Office</u>, 298 F.3d 81, 90 (1st Cir. 2002); <u>Swain</u> v. <u>Spinney</u>, 117 F.3d 1, 9-10 (1st Cir. 1997).

In a decision issued after the district court ruled, the Supreme Court has instructed us to start not with the immunity issue but with the question whether the facts <u>as alleged</u> make out a violation of the First Amendment.  <u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194, 201 (2001).[2]  This makes sense where the issue is whether some abstract right exists; otherwise the "rights" issue may never be resolved.  <u>Id.</u>  But it is an uncomfortable exercise where, as here, the answer whether there was a violation may depend on a kaleidoscope of facts not yet fully developed.  It may be that <u>Saucier</u> was not strictly intended to cover the latter case.

Nevertheless, assuming <u>arguendo</u> that <u>Saucier</u> applies, we agree with Dirrane that a colorable constitutional claim would be made out if <u>everything</u> asserted by Dirrane in his very lengthy complaint were established as true and--perhaps more importantly--

---

[2]On a motion to dismiss based on the complaint, the facts as alleged in the complaint control, with minor qualifications, <u>e.g.</u>, <u>Beddall</u> v. <u>State St. Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998) (court can consider undisputed documents alleged or referenced in the complaint); but if the immunity issue is presented on a motion for summary judgment, facts not reasonably contestable may be part of the landscape. See <u>C.K. Smith & Co.</u> v. <u>Motiva Enters. LLC</u>, 269 F.3d 70, 73 (1st Cir. 2001).

defendants had <u>no</u> other facts with which to justify their actions. It is difficult to be more definitive because of a lack of case law; usually, the plaintiff is derailed before the court reaches the merits question because the plaintiff was a policymaker who could be fired or demoted because of his speech, or because pre-<u>Saucier</u> qualified immunity mooted the merits question.

In all events, the constitutional standard already set forth requires a balancing of the considerations on both sides. Those in Dirrane's favor are fairly easy to state. Some of the conduct he charged is serious (such as destroying fingerprint evidence and falsifying reports) and allegedly continued over several years. He asserts that his supervisors listened to him but did not make any serious effort to investigate his allegations and that he was then transferred in retaliation for his complaints. In sum, the allegations have the structure of a classic cover-up in which the whistleblower suffered an adverse change in employment "because" of his speech on a public issue.

As one adds flesh to the bones, the situation becomes less clear-cut. On the department's side, it had some basis for distrusting Dirrane: he made one complaint after another on a wide range of topics, some trivial, and others so serious as perhaps to be difficult to credit. Certainly, a responsible department head or chief would investigate (and Dirrane's allegation is that nothing much was done). Still, his superiors could have concluded,

even if mistakenly so, that they were dealing with someone who would say anything to get attention and who would make up more serious allegations when less serious ones failed to draw attention.

Further, no action was taken against Dirrane simply for making complaints. It was only after a considerable period (Dirrane's complaints began in 1992; he was not transferred until 1997) that the department finally took action; by this time, Dirrane's accusations had to have caused serious disruption in his three-person unit, given that Dirrane had accused his supervisor and co-worker of a multitude of offenses over a long period. Dirrane admitted this was so. Even then, Dirrane was not demoted or fired; he was simply transferred to another unit, one that he had raised as an alternative position.

Still, we conclude that Dirrane's version of facts makes out a colorable First Amendment violation. Whatever the doubts about his judgment, Dirrane had made several extremely serious and specific charges of criminal misconduct which (on his version of events) the department did not seriously investigate. Had an investigation determined that the allegations were unfounded, the disruption they generated would have amply justified the modest impact of Dirrane's transfer upon his (and the public's interest in) his speech; but to transfer him without any serious investigation cannot be defended under the Supreme Court's

-10-

balancing-of-interests test. Cf. Roth v. Veteran's Admin., 856 F.2d 1401, 1407-08 (9th Cir. 1988).

However, on qualified immunity, the outcome is different. This is not the archetypal case of an employee who blows the whistle on government misdeeds and is fired. The serious charges that Dirrane made were nestled in a morass of complaints. The department had some basis for distrusting Dirrane's judgment. The department did not try to fire him; it just moved him to a position even he described as a second choice. Here, as is common where there is a lack of precedent,[3] this is not a case in which a reasonable officer must have known that he was acting unconstitutionally.

2. The district court also rejected Dirrane's claim for damages against the town which, under Monell, cannot be based on respondeat superior but requires independent liability based on an unconstitutional policy or custom of the municipality itself. The district court ruled that the town government, not the "weak chief" of the police department, see Chief of Police v. Town of Westford, 313 N.E.2d 443, 445-46 (Mass. 1974), was the pertinent policymaker for purposes of Monell and, on summary judgment, the court saw no evidence of a wrongful policy existing at the town level.

---

[3]E.g., Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir. 1992); accord Bartlett v. Fisher, 972 F.2d 911, 916 (8th Cir. 1992); Rakovich v. Wade, 850 F.2d 1180, 1211-13 (7th Cir.) (en banc), cert. denied, 488 U.S. 968 (1988).

On appeal, Dirrane argues that <u>Monell</u> does not bar a federal claim for prospective <u>injunctive</u> relief (as opposed to damages) against the town. However, the Supreme Court, in imposing the precondition of an unconstitutional "official municipal policy," was directly addressing "monetary, declaratory, or <u>injunctive</u> relief." <u>Monell</u>, 436 U.S. at 690 (emphasis added). Thus, the Ninth Circuit's contrary position in <u>Chaloux</u> v. <u>Killeen</u>, 886 F.2d 247, 250 (9th Cir. 1989), is on its face at odds with <u>Monell</u> itself. Several other circuits have assumed that the <u>Chaloux</u> interpretation is incorrect.[4]

Dirrane also makes the more limited argument that <u>Monell</u> does not apply where the plaintiff is seeking prospective injunctive relief against a local official rather than the town. The wrinkle here is that Dirrane has insisted that he seeks injunctive relief against the police chief in his <u>official</u> rather than his <u>personal</u> capacity. <u>Monell</u> says that a suit against an officer in his official capacity is "only another way of pleading an action against an entity of which an officer is an agent." <u>Monell</u>, 436 U.S. at 690 n.55; <u>see also</u> <u>Will</u> v. <u>Mich. Dep't. of</u>

_____

[4]<u>Gernetzke</u> v. <u>Kenosha Unified Sch. Dist. No. 1</u>, 274 F.3d 464, 468 (7th Cir. 2001) ("The predominant though not unanimous view is that <u>Monell</u>'s holding applies regardless of the nature of the relief sought."), <u>cert. denied</u>, 122 S. Ct. 1606 (2002); <u>Bannum, Inc.</u> v. <u>City of Fort Lauderdale</u>, 901 F.2d 989 (11th Cir. 1990)(applying <u>Monell</u> even though the plaintiff only sought declaratory and injunctive relief); <u>see also</u> <u>Los Angeles Police Protective League</u> v. <u>Gates</u>, 995 F.2d 1469, 1477-78 (9th Cir. 1993) (Fletcher, J., concurring).

State Police, 491 U.S. 59, 71 (1989) (a suit against a state official in his official capacity "is not a suit against the official but rather is a suit against the official's office").

Yet in the sovereign immunity context, the Supreme Court has repeatedly said that an official who acts unconstitutionally can be enjoined even though the state is immune from damages. E.g., Ex Parte Young, 209 U.S. 123, 159 (1908). While one might at first suppose that these were injunctions against the official in his personal capacity (based on the fiction that unconstitutional action is not "official"), the Court has stated that the injunction can be issued against the official in his official capacity. In Will itself, 491 U.S. at 71 n.10 (1989), the Court said that "of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Accord Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985).

Where the injunction does not implicate direct payments, the difference between personal and official capacity is largely in the details, (e.g., whether the injunction runs against a successor in office), and none of the Court's seemingly inconsistent locutions occurs in a case where it matters. However the Supreme Court eventually resolves the tension in its pronouncements, equitable relief would not be appropriate here. In his new

position, Dirrane does not plausibly claim to be threatened with retaliation. And reinstatement in the ID unit, not specifically requested by Dirrane, would be a dubious remedy. See, e.g., Velazquez v. Figueroa-Gomez, 996 F.2d 425, 428-29 (1st Cir.), cert. denied 510 U.S. 993 (1993); O'Donnell v. Yanchulis, 875 F.2d 1059, 1062-63 (3rd Cir. 1989).

3. This brings us to Dirrane's claim for damages against the town based on the state whistleblower law. That statute, reprinted in pertinent part in an appendix to this opinion, is complicated and in certain respects unclear. But neither side has asked for certification, and we have no intention of further prolonging this litigation.

The Massachusetts statute gives a civil claim for damages and equitable relief to an employee against a city or town (among other public entities) that engages in a "retaliatory action" against the employee "because" of defined protected conduct; this conduct includes the employee's disclosure "to a supervisor or to a public body" of activities that the employee reasonably believes to constitute wrongdoing, a concept spelled out in generous terms. Mass. Gen. Laws ch. 149, § 185(b). "Retaliatory action" is defined to include "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." Id. § 185(a)(5).

Certainly some of the disclosures made by Dirrane to his superiors concerned conduct, primarily that of Sergeant Heavey, which (if it occurred) would have comprised wrongdoing within the meaning of the statute. The district court gave two reasons for dismissing the statutory claim. One is that Dirrane expressly requested the transfer, the transfer being the primary conduct that might constitute retaliation; the other is that Dirrane admittedly did not give the written notice that the district court deemed the statute to require.

Dirrane admits that he asked for the transfer but says that he did so only because the new hours that had been fixed for him in the ID Unit were impossible for him because of his child-care duties. He argues that these hours were set in an effort to coerce him into transferring. Whatever the reality, the record is sufficiently muddled on this issue to debar summary judgment. It is enough to note that in discovery both O'Leary and Keaveney linked the transfer in some measure to Dirrane's continued complaints.

The second ground is much more complicated. The statute makes any civil claim by the employee contingent on giving the employer "written notice" and "a reasonable opportunity to correct" the wrongdoing before the employee reports the activity to a "public body." Mass. Gen. Laws ch. 149, § 185(c)(1). "Public body," as defined, includes the police department. Id.

-15-

§ 185(a)(3).  Because Dirrane reported the conduct to his supervisors in the police department but never gave written notice, the district court--reading the statute literally--deemed Dirrane's claim barred.

Although the point can be debated and no one has cited a Massachusetts case on point, we think this literal application of the statute is at odds with its design and purpose.  Reading the pertinent provisions in full (see the appendix), it is apparent that an oral disclosure to a supervisor is protected outright against retaliation; the requirement of written notice and an opportunity to correct is imposed where the disclosure is to an outside public body.  Compare Mass. Gen. Laws ch. 149, § 185(a)(3) with id. § 185(a)(4).

Patently, the purpose was to give the employer unequivocal notice (i.e., in writing) and an opportunity to clean up its own house before the matter was taken outside.  But Dirrane did not go outside before filing this lawsuit.  His complaints were to superiors within the department.  It is happenstance, and irrelevant to the obvious purpose of the written notice requirement, that the department itself happens to be a "public body" to which employees of other agencies might bring complaints about wrongdoing of their own employers.  In short, to treat Dirrane's internal complaints as triggering the notice requirement makes no sense.

-16-

Alternatively, the town argues that the state court in which Dirrane filed his lawsuit was a public body and thus he was required to give written notice before filing suit. Under the literal language of the statute, the town is correct; the statute defines "public bodies" to include "any federal, state, or local judiciary." Mass. Gen. Laws ch. 149, § 185(a)(3). In this application, a literal reading does make sense: the written notice requirement gives the employer one last chance to correct wrongdoing before the employee goes public with his accusations.

Of course, on Dirrane's version of events, his oral complaints were repeated and comprehensive and a written notice would likely have produced no different result. Nor is there any indication that written notice prior to suit would have resulted in the department undoing the transfer. But the statute is unqualified in its requirement and in this instance a hard and fast rule does serve a rational purpose, namely, by avoiding uncertainties about what might have happened if formal notice had been given. Thus, we agree that the state whistleblower claim is barred.

4. Little needs to be said about the defamation claims. The counterclaiming defendants admit that under New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964), they had to point to evidence from which a jury could infer that Dirrane made false statements knowing them to be false or with reckless disregard for

their truth.  The evidence to which defendants point in their briefs to raise a factual issue is that some of the incidents alleged by Dirrane were not recorded in his day-book and that Chief O'Leary opined briefly in a deposition that he thought Dirrane knew some of his statements were false.

These fragments amount to nothing.  Yes, Dirrane said that he tried to record all his complaints; but obviously a few omissions, even coupled with one inconsistency between Dirrane's elaborate record and his detailed oral complaints, are not real proof of malice.  As for Captain O'Leary's unexplained conclusion that Dirrane "probably" did not believe some of his own allegations, it is not even admissible evidence of malice, being an "opinion" in no way helpful to the jury.  See Fed. R. Evid. 701.

The judgment of the district court is affirmed.  Each side shall bear its own costs on this appeal.  Mass. Gen. Laws ch. 149, § 185.

APPENDIX

Mass. Gen. Laws ch. 149, § 185. Retaliatory Action Against Employees Prohibited; Conditions; Exceptions.

Retaliatory Action Against Employees Prohibited; Conditions; Exceptions.

(a) As used in this section the following words shall have the following meanings:--

(1) "Employee", any individual who performs services for and under the control and direction of an employer for wages or other remuneration.

(2) "Employer", the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof.

(3) "Public body", (A) the United States Congress, any state legislature, including the general court, or any popularly elected local government body, or any member or employee thereof; (B) any federal, state or local judiciary, or any member or employee thereof, or any grand or petit jury; (C) any federal, state or local regulatory, administrative or public agency or authority, or instrumentality thereof; (D) any federal, state or local law enforcement agency, prosecutorial office, or police or peace officer; or (E) any division, board, bureau, office, committee or

commission of any of the public bodies described in the above paragraphs of this subsection.

(4) "Supervisor", any individual to whom an employer has given the authority to direct and control the work performance of the affected employee, who has authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains, or who has been designated by the employer on the notice required under subsection (g).

(5) "Retaliatory action", the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment.

(b) An employer shall not take any retaliatory action against an employee because the employee does any of the following:

(1) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or of another employer with whom the employee's employer has a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment;

(2) Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law, or activity, policy or practice which the employee reasonably believes

poses a risk to public health, safety or the environment by the employer, or by another employer with whom the employee's employer has a business relationship; or

(3) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment.

(c) (1) Except as provided in paragraph (2), the protection against retaliatory action provided by subsection (b) (1) shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law, or which the employee reasonably believes poses a risk to public health, safety or the environment, to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice.

(2) An employee is not required to comply with paragraph (1) if he: (A) is reasonably certain that the activity, policy or practice is known to one or more supervisors of the employer and the situation is emergency in nature; (B) reasonably fears physical harm as a result of the disclosure provided; or (C) makes the disclosure to a public body as defined in clause (B) or (D) of the definition for "public body" in subsection (a) for the purpose of providing

evidence of what the employee reasonably believes to be a crime.

(d) Any employee or former employee aggrieved of a violation of this section may, within two years, institute a civil action in the superior court. Any party to said action shall be entitled to claim a jury trial. All remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any legal or equitable relief provided herein. The court may: (1) issue temporary restraining orders or preliminary or permanent injunctions to restrain continued violation of this section; (2) reinstate the employee to the same position held before the retaliatory action, or to an equivalent position; (3) reinstate full fringe benefits and seniority rights to the employee; (4) compensate the employee for three times the lost wages, benefits and other remuneration, and interest thereon; and (5) order payment by the employer of reasonable costs, and attorneys' fees.