# United States Court of Appeals

## For the First Circuit

No. 04-1574
No. 04-1741

ROBERT WAGNER,

Plaintiff, Appellant/Cross-Appellee,

_____

MARGARET WAGNER,

Plaintiff,

v.

CITY OF HOLYOKE, MASSACHUSETTS,

Defendant, Appellee/Cross-Appellant,

DANIEL SZOSTKIEWICZ; MARK COURNOYER;
STEPHEN DONOGHUE,

Defendants, Appellees.

_____

ARTHUR MONFETTE; ARTHUR THERRIEN; DENNIS EGAN;
THE INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS;
LOCAL 409 OF THE INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS;
LOCAL 388 OF THE INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS,

Defendants.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

_____

Before

Boudin, Chief Judge,

Selya and Lynch, Circuit Judges.

_____

Stewart T. Graham, Jr. with whom Graham & Graham was on brief for plaintiff,appellant/cross-appellee Robert Wagner.

John H. Fitz-Gibbon with whom Harry L. Miles, Green, Miles, Lipton, White & Fitz-Gibbon, John C. Sikorski, Dorothy Varon and Robinson Donovan, P.C. were on brief for defendant, appellee/cross-appellant City of Holyoke and defendants, appellees Daniel Szostkiewicz, Mark Cournoyer and Stephen Donoghue.

————————————

April 13, 2005

————————————

**Per Curiam**.  In June 1998, Robert Wagner, a sergeant in the Holyoke Police Department, brought suit against the City of Holyoke, its former mayor, two of its former police chiefs and others for an alleged campaign of retaliation undertaken against him during the mid-1990s.  Wagner claimed that he had been subjected to disciplinary action, harassment and public humiliation because he had disclosed a variety of information--including allegations of police misconduct--to newspapers and state and federal agencies.  Wagner's initial complaint presented multiple statutory and common law claims, but the only ones of relevance here are those under 42 U.S.C. § 1983 (2000), for violation of the first and fourteenth amendments, and under the Massachusetts whistleblower statute, Mass. Gen. Laws ch. 149, § 185 (2002).

On motions for summary judgment, the district court granted qualified immunity to the individual defendants on the section 1983 claim and dismissed the whistleblower claim because Wagner had failed to provide written notice to his supervisor before filing suit (as this court had previously interpreted the statute to require).  On the section 1983 claim against Holyoke, the court denied Wagner's motion for a partial directed verdict regarding particular incidents of speech that it had found worthy of first amendment protection.  The section 1983 claim was presented to the jury on two alternative theories: that Wagner had suffered an "adverse employment action" in retaliation for his

speech, and that he had endured "severe harassment" for that speech. In June 2003, after a six-week trial, the jury found for the city on the former theory; it found for Wagner on the latter, awarding nominal damages of one dollar. The jury ruled for defendants on Wagner's remaining claims, none of which are presently at issue.[1]

Wagner appeals, claiming that the district court erred in granting qualified immunity to the individual section 1983 defendants, in denying his motion for a partial directed verdict, in dismissing his state whistleblower claim, in drafting various of its jury instructions, and in declining to grant a new trial on damages for his "severe harassment" claim and in toto for his "adverse employment action" claim. The city cross-appeals, challenging the district court's award of attorneys' fees and costs to Wagner.

Over the four years following his resignation as chief of police in September 1994, Wagner (who remained on the force in a subordinate capacity) received numerous suspensions and reprimands--some allegedly in response to various disclosures and public statements made by Wagner, but others for independent instances of

---

[1]Wagner also sought a declaratory judgment that certain police department regulations violated the Massachusetts Declaration of Rights and the federal constitution. The district court initially granted a preliminary injunction to Wagner on two of the challenged regulations; these regulations were ultimately rewritten by the Holyoke police department, mooting Wagner's challenge to their constitutionality.

insubordination or violations of departmental regulations. The district court found that Wagner had engaged in six categories of speech that were provisionally protected under the first amendment, see Pickering v. Bd. of Educ., 391 U.S. 563 (1968), and that ultimately formed the basis for his claims at trial: (1) statements in 1996 and 1997 to a city councilman regarding discrimination, working conditions and illegal activity in the police department; (2) statements made to assist a fellow officer in filing formal complaints of discrimination; (3) statements to the state attorney general's office regarding police corruption; (4) comments made to a local reporter for a set of three articles in February 1997; (5) a complaint to the Massachusetts Committee Against Discrimination, filed by Wagner in May 1997, and a "rebuttal" filed by him in October of the same year; and (6) a written submission to the Massachusetts Labor Relations Commission in May 1998.

Wagner claims that the district court should have granted a directed verdict on the disciplines he suffered that corresponded to the last three of these categories of speech. He notes that a number of Holyoke officials testified that if he had not made these statements or released various documents associated with them he would not have been disciplined, and he argues that this fact-- coupled with the fact that the underlying speech was protected under the first two prongs of Pickering--entitled him to a directed verdict in his favor on those claims.

These incidents of Wagner's speech, however, also involved the disclosure of confidential material protected by departmental regulations and Massachusetts law, as well as breaches of the police department's chain of command. At trial, Holyoke claimed that it was Wagner's acts of unlawful disclosure and insubordination that were the true grounds for disciplining him--or at least independent grounds that entitled the city to a defense under Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977).

Wagner attempts to undermine this argument by claiming that the disclosures and disobedience were not "independent" acts that could support disciplinary action, but were rather part and parcel of his speech. We disagree. While individuals are entitled to speak on matters of public concern free from the threat of retaliation (at least if their speech is protected under Pickering), this does not entitle those same individuals to use whatever methods or instrumentalities they see fit to convey their message. If the use of such inappropriate means of expression--rather than the speech itself--prompts discipline, there is no first amendment violation. This is the very essence both of Pickering's third-prong inquiry into whether the protected speech was a "substantial or motivating factor" behind an adverse employment action, and of the Mount Healthy defense, which asks if the plaintiff would have been disciplined even in the absence of

his protected speech.  See O'Connor v. Steeves, 994 F.2d 905, 913 (1st Cir.), cert. denied, 510 U.S. 1024 (1993).

The documents disclosed by Wagner included arrest reports, an internal affairs report concerning a fellow officer, and 20-year-old personnel documents.  His actions bypassed the department's well-established chain of command.  These infractions may or may not have been the true reasons (or independent reasons) for Wagner's discipline at the hands of his superiors, but they certainly could not be discounted to such an extent as to require a directed verdict for Wagner.  Notwithstanding the snippets of testimony Wagner points to that suggest that his discipline was driven by his speech itself, the evidence was by no means enough to conclusively establish such causation--let alone preclude a defense under Mount Healthy that Wagner would still have been disciplined, regardless of his speech, for other improprieties incidental to that speech.  The district court's denial of a directed verdict was not error, nor (for the same reason) was its denial of Wagner's motion for a new trial on his "adverse employment action" claim after the jury had found against him.

Turning to the issue of qualified immunity, we agree with both Wagner and the district court that, taking the facts in the light most favorable to Wagner, the disciplines he endured could have made out a first amendment violation.  Nonetheless, as a shield to "all but the plainly incompetent," Malley v. Briggs, 475

U.S. 335, 341 (1986), qualified immunity is meant to protect any action by a government official with a colorable argument for constitutionality. Such immunity can be overcome only if the constitutional right at issue is clearly established <u>and</u> a reasonable official would have known that his actions violated that right. See <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800, 818 (1982).

The general right invoked by Wagner--to engage in speech on matters of public concern without retaliation--was clearly established prior to 1994. But qualified immunity requires that the general right be placed in a reasonably specific context; and given the facts surrounding Wagner's discipline, this is not a case in which reasonable officers, in light of clearly established law, "<u>must</u> have known that [they were] acting unconstitutionally." <u>Dirrane</u> v. <u>Brookline Police Dep't</u>, 315 F.3d 65, 71 (1st Cir. 2002).

To the contrary, Wagner's broad range of complaints (some consisting of unprotected and antagonistic speech), coupled with his disregard of confidentiality protocols and his disobedience in following the department's chain of command, would have permitted a reasonable superior officer to believe that he was entitled to discipline Wagner regardless of the content of his speech, consistent with the protections of the first amendment. Even if this reasoning were mistaken, it would not have been egregiously so and, accordingly, qualified immunity is available. See <u>Ringuette</u> v. <u>City of Fall River</u>, 146 F.3d 1, 5 (1st Cir. 1998).

Little need be said about Wagner's remaining claims of error. We have previously interpreted the Massachusetts whistleblower statute to preclude suits filed by municipal employees without prior written notice to their supervisors. See Dirrane, 315 F.3d at 73. Section 185(c)(2)(C) of the statute, which eliminates the notice requirement when disclosure is made to provide evidence of a crime, is irrelevant: Wagner makes no claim that the disclosure at issue here--his filing of suit--was for the purpose of providing criminal intelligence, and Wagner admits that he did not serve written notice on his supervisor before bringing suit. The reasoning of our prior decision in Dirrane, which is binding on the panel, thus precludes Wagner's whistleblower claim.

Wagner's claims of error in the jury instructions also fail. We perceive no error whatever in the district court's definition of "adverse employment action." Nor do we believe that its definition of "severe harassment," if it was indeed error, was any more than harmless: there is no reasonable likelihood that the jury, having awarded only one dollar to Wagner for his own employment-related stress (supported by medical testimony), would have given him more if the focus had been clearly broadened to cover family-related concerns.

We also see no manifest injustice or inconsistency in the jury's award of nominal damages for Wagner's "severe harassment" claim: we agree with the district court that it was a plausible

-9-

interpretation of the evidence for the jury to find that Wagner had suffered harassment sufficient to make out a first amendment claim, but that his actual damages derived from such a claim (which were contested at trial) were de minimis.  This is not a case in which undisputed evidence compelled a finding of substantial damages.

On cross-appeal, Holyoke seeks to vacate the district court's award of $72,840 in attorneys' fees and costs.  Where, as here, a plaintiff has succeeded in his section 1983 claim--even if only for nominal damages--he is a "prevailing party" under the relevant statute, 42 U.S.C. § 1988 (2000), and may be entitled to such fees as the district court finds appropriate given the proportionate success he has achieved.  "We review fee awards deferentially, according substantial respect to the trial court's informed discretion.  We will disturb such an award only for mistake of law or abuse of discretion."  Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 336 (1st Cir. 1997) (internal citation omitted).

The district court ordinarily must provide reasons for its award and those reasons must be legally sound, see Coutin, 124 F.3d at 337, but the court below fulfilled its duty in this regard. Wagner may well have made a greater fee request than was merited given his limited success at trial, but the district court compensated for this excess and we do not believe its calculus was

erroneous--let alone so clearly erroneous as to constitute an abuse of discretion.

Affirmed.