# United States Court of Appeals
## For the First Circuit

No. 05-1195

RONALD JORDAN, ROBERT MACKAY AND
THE MBTA POLICE PATROLMAN'S UNION,

Plaintiffs, Appellees,

v.

JOSEPH C. CARTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Howard, Circuit Judge.

Mark W. Batten, with whom Proskauer Rose LLP was on brief, for appellant.
James W. Simpson, Jr., with whom Douglas I. Louison and Merrick, Louison & Costello, LLP, were on brief, for appellees.

November 4, 2005

**COFFIN, <u>Senior Circuit Judge</u>**. Appellant Joseph C. Carter is chief of the Massachusetts Bay Transit Authority (MBTA) police department. Two officers (plaintiffs-appellees) sued Carter in both his individual and official capacities, alleging, <u>inter</u> <u>alia</u>, that he violated their First Amendment rights by disciplining them for comments they made to each other and to other officers about various police department matters. As part of a motion seeking judgment on the pleadings, Carter moved to dismiss the individual claims on the ground that he was immune from suit under the doctrine of qualified immunity. The district court's denial of that motion, in a ruling from the bench following oral argument, is the sole subject of this interlocutory appeal.[1]

In reviewing the disposition of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), we may consider only the facts as alleged in the complaint, viewed in the light most favorable to the appellees. <u>Pasdon</u> v. <u>City of Peabody</u>, 417 F.3d 225, 226 (1st Cir. 2005). With that constraint on our analysis, we conclude that the district court reached the correct result.

---

[1] The two officers, along with the MBTA Police Patrolman's Union, sued the MBTA as well as Carter, and also alleged violations of the officers' rights to due process and freedom of association under state and federal law, and additionally asserted state law claims for intentional infliction of emotional distress. The MBTA voluntarily dismissed all of its claims, and the individual plaintiffs voluntarily dismissed their due process claims. The district court dismissed the freedom of association claims and granted judgment for defendant on the emotional distress claims.

## I. Background

The pertinent facts are few, as we are limited to the allegations in the complaint and the complaint is sparsely drafted. It states that the plaintiffs, Ronald Jordan and Robert McKay, were suspended with pay in the spring of 2004 after the defendants "illegally search[ed] and analyz[ed] recorded telephone conversations between other officers and superiors."[2] The conversations at issue, which were recorded on the MBTA's telephone system, pertained to four matters:

(1) requesting criminal offender record information ("CORI") about several individuals;
(2) criticizing the deputy chief and other department management;
(3) discussing the chief's absenteeism and referring to him as "No Show Joe";
(4) discussing safety issues concerning the Dudley Station of the MBTA.

Plaintiffs alleged that appellant Carter "personally disciplined and caused damages to the plaintiffs because of their criticism of his job performance and the job performance of his deputies," in violation of their First Amendment right to free speech.

As noted above, the district court rejected appellant's qualified immunity defense, which shields government actors from damages based on their conduct unless a reasonable official would have known, in light of clearly established law, that he was acting

---

[2] Defendants submitted transcripts of the recorded conversations to the district court for possible consideration in connection with their motion, but both sides on appeal treat the transcripts as outside the record, and thus so do we.

unconstitutionally.  See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Wagner v. City of Holyoke, 404 F.3d 504, 509 (1st Cir. 2005) (per curiam), petition for cert. filed, 74 U.S.L.W. 3121 (U.S. Aug. 17, 2005) (No. 05-234); Dirrane v. Brookline Police Dep't, 315 F.3d 65, 69 (1st Cir. 2002).  On appeal, appellant continues to pursue such protection, emphasizing that immunity is the norm in public employee First Amendment cases because the constitutional question requires fact-intensive balancing – making it unlikely that a reasonable official "must have known that he was acting unconstitutionally," Dirrane, 315 F.3d at 71 (emphasis in original).

Although appellant is correct that the relevant qualified immunity case law is generally in his favor, his argument fails to appreciate that, because this case comes before us at such a preliminary stage, the immunity analysis is weighted toward the plaintiffs' version of events, as depicted by the allegations in the complaint.  See Pasdon, 417 F.3d at 226 (motion for judgment on the pleadings should not be granted "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'") (citation omitted). As we review below the legal frameworks that govern our decision, it will become apparent why appellant's immunity defense must at this point be rejected.

## II. Discussion

### A. Qualified Immunity

In deference to the sensitive discretionary judgments that government officials are obliged to make, qualified immunity safeguards even unconstitutional conduct if a reasonable officer at the time and under the circumstances surrounding the action could have viewed it as lawful. See Malley v. Briggs, 475 U.S. 335, 341 (1986); Wagner, 404 F.3d at 508-09. The ultimate question before us, therefore, is not whether appellant Carter committed an unconstitutional act, but whether his disciplinary action against the plaintiffs is entitled to immunity from liability even if that action violated plaintiffs' First Amendment rights.

To answer the immunity question, we employ a three-part test that examines both the state of the relevant law and the nature of the alleged conduct. Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004). First, we consider whether plaintiffs' allegations, if true, establish a constitutional violation. Second, we look at whether the right allegedly violated was clearly established at the time of the challenged conduct. Finally, if the prior two questions are answered affirmatively, we determine "whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Id. If the final answer is "no," a defendant will be entitled to

qualified immunity notwithstanding constitutional injury to the plaintiff.

The Supreme Court has directed us, in the absence of special circumstances, to take up these questions in order, even though it might be easier at times to bypass the substantive constitutional question and conclude that, at a minimum, the law was not clearly established when the challenged conduct occurred. See Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003). With such a sequential approach, the law continues to develop and become more "clearly established" over time. Saucier, 533 U.S. at 201 ("This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead [to the other questions].").

Thus, we turn first to the first question: do plaintiffs' allegations establish a constitutional violation? Our review is de novo. See Mihos, 358 F.3d at 102.

B. First Amendment

To determine whether the facts as alleged state a violation of the plaintiffs' First Amendment rights, we confront a second three-part inquiry:

> (1) whether the speech involves a matter of public concern; (2) whether, when balanced against each other,

-6-

the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff.

Id.(noting that these inquiries derive, respectively, from the Supreme Court's decisions in Connick v. Myers, 461 U.S. 138 (1983); Pickering v. Bd. of Educ., 391 U.S. 563 (1968); and Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); see also Fabiano, 352 F.3d at 453; Mullin v. Town of Fairhaven, 284 F.3d 31, 37-38 (lst Cir. 2002). We need address only the first two questions, as appellant acknowledges that the complaint satisfies the third element by alleging that appellant disciplined plaintiffs in retaliation for protected speech.

(1) Matter of Public Concern

Our first step is to determine, based on "'the content, form, and context of a given statement, as revealed by the whole record,' whether the employee was speaking 'as a citizen upon matters of public concern,' or, alternatively, 'as an employee upon matters only of personal interest,'" O'Connor v. Steeves, 994 F.2d 905, 912 (lst Cir. 1993) (quoting Connick, 461 U.S. at 147-48). See also, Tripp v. Cole, 425 F.3d 5, 11 (lst Cir. 2005); Mihos, 358 F.3d at 102. If only personal speech is involved, "'then its First Amendment value is low, and a "federal court is not the appropriate forum in which to review the wisdom" of internal decisions arising therefrom.'" Fabiano, 352 F.3d at 453 (citations omitted).

-7-

In some instances, the subject matter of the speech, alone, may resolve the "public concern" question, as when the employee "expresses himself on a subject that is 'clearly a legitimate matter of inherent concern to the electorate,'" id. at 454 (quoting O'Connor, 994 F.2d at 913-14).  In other instances,

> public-employee speech on a topic which would not necessarily qualify, on the basis of its content alone . . . (e.g., internal working conditions, affecting only the speaker and co-workers), may require a more complete Connick analysis into the form and context of the public-employee expression . . . .

O'Connor, 994 F.2d at 914 (emphasis in original).

The terseness of the instant complaint precludes us from performing a close analysis of the targeted speech.  We have available only the general subject matter of the statements at issue, plus the fact that they were made in conversations with "other officers and superiors" on a police department telephone line.  Nonetheless, working with what we have, our task is to consider whether the categories of statements listed in the complaint qualify as addressing matters of public concern.

Drawing all inferences in favor of the plaintiffs, we cannot reject the possibility that at least some of the speech would fall within an area of public concern.  Indeed, appellant admits as much.  Criticism of the chief and other management, as well as expressions of concern about safety at one of the MBTA passenger stations, could – depending upon the particulars of content, form and context – constitute "a matter of legitimate public concern,"

-8-

O'Connor, 994 F.2d at 915.[3]  Certainly, if either official misconduct or neglect of duties was asserted to be responsible for unsafe conditions for the general public, this would be a matter of public importance.  If, however, the performance critiques concerned only matters of internal working conditions, and the discussion of "safety issues" at the Dudley Station likewise reflected an employee workplace concern rather than the public interest, plaintiffs' constitutional claim would falter at the threshold inquiry.  With the record undeveloped, and the facts thus still capable of tilting in either direction, we accept for present purposes that the public concern prong is satisfied.

(2) Balancing the Interests

The second step in determining whether appellant committed a First Amendment violation is to balance the plaintiffs' and public's interests in the plaintiffs' speech against the "'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees . . . ,'" Pickering, 391 U.S. at 568.  Although this is intended to be a "particularized" inquiry, see Fabiano, 352 F.3d at 455 ("[I]f the

_____

[3] We do not address the first category of conversations – "[r]equesting CORI records."  Putting aside the question whether such requests would constitute relevant "speech," plaintiffs appear to acknowledge that they would not implicate a matter of public concern.  In addition, the complaint explicitly attributes the discipline imposed by appellant Carter to plaintiffs' criticism of appellant's job performance and the job performance of his deputies, and not to the records requests.

-9-

plaintiff's constitutional claim is relatively weak, . . . the government need show less to counter it."), we have little to assess at this point on either side of the scale.

On plaintiffs' side, our inquiry considers their interests in communicating the safety concerns and performance criticism that we have deemed potentially of public concern, as well as the interests of the public in receiving such information. See Mihos, 358 F.3d at 107. While our starting point is that such information about public welfare and public officials is of significant weight, we must factor in particulars such as the nature of the comments and the motivation behind the speech. For example, when public-employee expression is done in a "'vulgar, insulting, and defiant' manner," Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1290 (11th Cir. 2000), or is motivated by self-interest rather than by a desire to serve the public interest, see O'Connor, 994 F.2d at 915, it is entitled to less weight in the Pickering balance. On the other hand, the fact that statements are made in private conversations and not disseminated to the public at large does not necessarily weigh against them. See id. at 916-17. Here, we have no information about the particulars of plaintiffs' comments, other than that they were made on MBTA phone lines; we thus have no basis for discounting plaintiffs' and the public's interests.

Meanwhile, in examining appellant's side of the balance, we acknowledge that the government's interest "is particularly acute

-10-

in the context of law enforcement, where there is a 'heightened interest . . . in maintaining discipline and harmony among employees,'" <u>Moore</u> v. <u>Wynnewood</u>, 57 F.3d 924, 934 (10th Cir. 1995) (citation omitted); <u>see</u> <u>also</u>, <u>Oladeinde</u> v. <u>City of Birmingham</u>, 230 F.3d 1275, 1293 (11th Cir. 2000); <u>Kokkinis</u> v. <u>Ivkovich</u>, 185 F.3d 840, 845 (7th Cir. 1999); <u>O'Donnell</u> v. <u>Barry</u>, 148 F.3d 1126, 1135 (D.C. Cir. 1998). But motivation is important here, too, and the allegations of the complaint tell us that appellant retaliated because of plaintiffs' criticism of his and his deputies' job performance. If appellant did so entirely out of self-interest to silence legitimate criticism, the government interest would be weakened.

We believe our discussion makes it evident that, without the particulars relevant to both sides of the balance, we cannot definitively resolve the constitutional question. Still, given that we must at this juncture indulge all inferences in favor of the plaintiffs, we conclude that, on the record before us, the complaint sufficiently states a constitutional violation. Having so resolved, and with appellant's concession that plaintiffs' allegations satisfy the "substantial factor" prong of the constitutional inquiry, we now return to the qualified immunity inquiry and the question whether plaintiffs' First Amendment rights were clearly established at the time appellant disciplined them for their speech.

C. <u>Clearly Established Right</u>

The second stage of the qualified immunity inquiry requires us to determine whether the right we have identified was "'reasonably well settled at the time of the challenged conduct,'" <u>Mihos</u>, 358 F.3d at 109 (quoting <u>Martinez</u> v. <u>Colon</u>, 54 F.3d 980, 988 (1st Cir. 1995)). Because that analysis "'must be undertaken in light of the specific context of the case, not as a broad general proposition,'" <u>Suboh</u> v. <u>Dist. Attorney's Office of Suffolk Dist.</u>, 298 F.3d 81, 93 (1st Cir. 2002) (quoting <u>Saucier</u>, 533 U.S. at 201), we again encounter the undeveloped state of the record as an obstacle. If we simply considered whether the law clearly established that a public employer may not penalize an employee for speech about a matter of public concern, it would be beyond debate that ample legal precedent existed to guide appellant's conduct. But using such a broad formulation to deny immunity is precisely what we have been told not to do. <u>See</u>, <u>e.g.</u>, <u>Wagner</u>, 404 F.3d at 509 ("The general right invoked by Wagner – to engage in speech on matters of public concern without retaliation – was clearly established prior to 1994. But qualified immunity requires that the general right be placed in a reasonably specific context . . . .").

Appellant, however, urges us to <u>award</u> him immunity based on a similarly generic argument. He emphasizes the abundant case law recognizing that it is rare for immunity to be denied when the constitutional right at issue involves weighing various factors.

We and other circuits have noted that the Pickering balancing is "'subtle, yet difficult to apply, and not yet well defined,'" Pike v. Osborne, 301 F.3d 182, 185 (4th Cir. 2002) (citation omitted), and that, consequently, only in the extraordinary case will it have been clearly established that a public employee's speech merited constitutional protection. See, e.g., Fabiano, 352 F.3d at 457; Chesser v. Sparks, 248 F.3d 1117, 1124 (11th Cir. 2001); Bartlett v. Fisher, 972 F.2d 911, 916-17 (8th Cir. 1992) (citing similar cases); O'Connor, 994 F.2d at 917 n.11.

Appellant claims that this cannot be the rare case because the complaint depicts disciplinary conduct imposed for a mixture of protected and unprotected speech, a combination that would engender uncertainty in any attempt to balance interests. In support, he cites our decision in Dirrane, 315 F.3d at 70-71, and asserts that it similarly involved "arguably protected statements 'nestled in a morass of complaints' that were not protected speech." In Dirrane, the plaintiff had complained over a number of years about abuses in the Brookline police force, ranging from minor issues to serious charges of falsification and destruction of evidence. He alleged that his supervisors had failed to seriously investigate his complaints and transferred him in retaliation for making them. We held that the plaintiff had made out "a colorable First Amendment violation," id. at 70, but because his years of petty complaints gave his superiors a basis for distrusting his judgment – and in

-13-

the absence of equivalent precedent – we found the individual defendants entitled to qualified immunity.  See id. at 71.

Although Dirrane also presented an appeal of a motion to dismiss, it provides limited support for appellant's immunity request.  We described the complaint there as "very lengthy," id. at 70, and we noted allegations detailing the statements that plaintiff made, to whom, and, at least to some extent, their timing.  We have none of those particulars here.  Appellant could have, but did not, move for a more definite statement.  See Fed. R. Civ. P. 12(e); Educadores Puertorriqueños En Acción v. Hernández, 367 F.3d 61, 67 (1st Cir. 2004).  We therefore cannot eliminate the possibility that the facts once developed will show a violation of clearly established law.   As we have intimated above, if plaintiffs' criticism consisted of serious expressions of concern, voiced in an appropriate manner, about the effect of their supervisors' poor performance on public safety or other public matters, and appellant's retaliation was primarily aimed at silencing their criticism for his own advantage, precedent would have clearly established that the balance of interests tipped decisively in plaintiffs' favor.  Appellant is thus not entitled to immunity based on prong two.

(3) The Understanding of a Reasonable Official

In the third step of the qualified immunity analysis, we consider whether an objectively reasonable officer in the

defendant's position would have understood his action to violate the plaintiff's rights. <u>Mihos</u>, 358 F.3d at 110; <u>Suboh</u>, 298 F.3d at 95. At this stage, as we have noted, the record requires us to look upon plaintiffs' speech as significantly involving matters of public concern. Similarly, we must assess and balance the interests of the parties, favoring plaintiffs in our reading of the allegations. And, since appellant concedes that the allegations establish that plaintiffs' speech was the motivating factor for imposing sanctions, the required inquiry leads to but one result. We cannot award immunity to appellant on the basis that a reasonable officer would not have realized the impropriety of his conduct.

## III. <u>Conclusion</u>

We are fully aware that the doctrine of qualified immunity is intended to protect government officials not only from personal liability but also from the burdens of litigation, <u>see</u> <u>Saucier</u>, 533 U.S. at 200-01, and that immunity is often appropriate in cases involving public employee speech. It is not an automatic entitlement, however, and a court may not cut off a plaintiff's claims based simply on the odds. Here, the record is insufficiently developed to permit a reasoned assessment of either the speech or conduct at issue, and we accordingly must draw all inferences in the plaintiffs' favor. From that perspective, we conclude that the district court properly denied appellant's motion

-15-

for dismissal of the individual claims based on the defense of qualified immunity.  We do not mean to imply any likely outcome as this case further proceeds.[4]

Affirmed.

---

[4] As we noted in Mihos, denial of immunity at the motion-to-dismiss stage does not preclude renewal of the defense in a subsequent motion for summary judgment or at trial.  See 358 F.3d at 110 n.16. If, however, "the trial court denies the request for summary judgment because of a genuine issue as to any material fact, including motive, that ruling would not permit an interlocutory appeal."  Id.