HOWARD, Circuit Judge,
concurring in the judgment.
The opinion of the court applies the three-part qualified immunity analysis called for in our recent cases and concludes that Tibbetts is entitled to qualified immunity at prong three. See, e.g., Wilson v. City of Boston, 421 F.3d 45, 52-59 (1st Cir.2005); Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 60-66 (1st Cir.2004); Suboh v. District Atty’s Office, 298 F.3d 81, 90-96 (1st Cir.2002); Abreu-Guzman v. Ford, 241 F.3d 69, 73-74 (1st Cir.2001). I write separately because I believe that Tibbetts should have prevailed on the initial inquiry — whether he violated Higgins’ constitutional rights — and more generally to urge consideration of a return to the “two-step process,” Brosseau v. Haugen, 543 U.S. 194, 195, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), traditionally employed in qualified immunity cases. I do so because our three-step process invites erroneous holdings and, possibly, erroneous outcomes, especially in Fourth Amendment cases.
For most of the last decade, this court has usually asked three questions when evaluating whether a government actor is entitled to qualified immunity: (1) Does the official conduct in question, as alleged, constitute the violation of an actual federal right? (2) If so, was the right so clearly established at the time of the alleged violation that a reasonable official would have been on notice that the conduct was unconstitutional? (3) If so, would a reasonable official have understood that the conduct violated the clearly established right at issue? E.g., Wilson, 421 F.3d at 52; but see Riverdale Mills, 392 F.3d at 61 n. 5 (acknowledging that we sometimes still follow a two-step process). A negative answer to question one means that there has been no violation of a federal right; a negative answer to question two or three gives rise to qualified immunity insofar as plaintiff is seeking money damages from the defendant.
The second and third questions we ask derive from an elaboration of the two-step process described in the Supreme Court’s qualified-immunity cases. The two-step test directs courts evaluating assertions of qualified immunity to ask: (1) Do the specific case facts alleged describe a violation of a federal right? (2) If so, should the defendant, who is charged with knowledge of clearly established law, have known that the conduct in question violated that right? See Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see also Riverdale Mills, 392 F.3d at 60-61 (observing that the second and third questions this circuit usually asks involve an expansion of the inquiry prescribed by the Supreme Court).
Our elaboration seems to have been prompted, at least in part, by a desire to emphasize that official defendants should not be held liable in situations where they have made reasonable mistakes about the facts of the situation they confront, as well as reasonable mistakes as to whether,- in light of clearly established law, their conduct infringed a federal right. See, e.g., Wilson, 421 F.3d at 57-58; Riverdale Mills, 392 F.3d at 61; Suboh, 298 F.3d at *16 96. The issue of mistaken factual (as opposed to legal) judgments frequently arises in civil rights actions alleging Fourth Amendment violations, where the constitutionality of an official’s conduct turns not on post hoc judgments about whether the search or seizure was justified or properly calibrated, but on whether it was reasonable under the tense, uncertain, and rapidly evolving circumstances that the official confronted. See Saucier, 533 U.S. at 204-05, 121 S.Ct. 2151 (discussing Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). But this is not exclusively a Fourth Amendment problem; the issue of mistaken factual judgments arises in other constitutional settings as well. See, e.g., Dirrane v. Brookline Police Dept., 315 F.3d 65, 69-70 (1st Cir.2002) (applying a fact-based balancing test to determine the viability of claimed First Amendment violation in the case of a government whistle-blower disciplined for “disruptive speech”); Suboh, 298 F.3d at 90-92 (applying a fact-based balancing test to determine the viability of alleged infringements of the right to “familial integrity,” protected by the Fourteenth Amendment’s Due Process Clause, in a child-custody dispute).
Of course, officials should not be made to pay damages for reasonable but mistaken factual judgments made in circumstances such as these. But the reason they should not be held liable is that an official who acts reasonably vis-a-vis the plaintiff has not violated the plaintiffs constitutional rights — even if the invasion in question proves unwarranted with the benefit of 20/20 hindsight. See Illinois v. Rodriguez, 497 U.S. 177, 183-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (emphasizing that the Fourth Amendment does not protect against searches and seizures that prove to have been unwarranted, but only against searches and seizures that were unreasonable). In such a situation, the qualified-immunity defense should not even be addressed because its necessary antecedent — the presence of a viable claim for the invasion of a federal right — is lacking. Our recent qualified-immunity cases obscure this point by suggesting that reasonable factual errors, like reasonable legal errors, are grist for the qualified-immunity mill, and are not to be analyzed as part of the threshold federal-right issue.
Our recent opinion in Wilson is instructive, consistent as it is with our other recent precedent. In that case, a woman who was mistakenly arrested pursuant to a sting operation designed to capture a large number of persons with outstanding arrest warrants sued the arresting officer for money damages, claiming that he violated her Fourth Amendment rights. See 421 F.3d at 47. In conducting our three-part qualified immunity analysis, we determined that, under the facts alleged, the arresting officers indeed had violated the plaintiffs right to be free from an erroneous arrest, and that it should have been clear to the arresting officer, under prevailing clearly established law, that his conduct was unlawful. See id. at 54-57. In other words, we answered our first two qualified-immunity questions in the affirmative. See id. Nonetheless, we concluded that the officer was entitled to qualified immunity. See id. at 57-59. We reasoned that the officer reasonably, although mistakenly, believed that there was an outstanding warrant for the plaintiffs arrest, and that he acted reasonably in promptly ordering the plaintiffs release upon learning of the error. See id.
The defendant in Wilson was not simply entitled to avoid damages liability because of the qualified-immunity doctrine; he was entitled to a merits dismissal of the plaintiffs Fourth Amendment claim because his conduct was reasonable under the circumstances. See Rodriguez, 497 U.S. at 183- *17 89, 110 S.Ct. 2793. In other words, he did not violate the plaintiffs Fourth Amendment rights. See id. The factual analysis performed at step three should have been performed at step one, and should have yielded the conclusion that there was no constitutional violation. Kegrettable as incidents of mistaken arrest such as this may be, American citizens simply do not have a free-standing Fourth Amendment right not to be arrested erroneously. Cf. id. at 184, 110 S.Ct. 2793 (“If a magistrate, based upon seemingly reliable but factually inaccurate information, issues a warrant for the search of a house in which the sought-after felon is not present, has never been present, and was never likely to have been present, the owner of that house suffers one of the inconveniences we all expose ourselves to as the cost of living in a safe society; he does not suffer a violation of the Fourth Amendment.”). The right protects only against unreasonable arrests — i.e., unreasonable mistakes about the perceived facts giving rise to the arrest.
I would not write separately if my concern were merely theoretical. Although the results in Wilson and this case remain the same whether we hold that there has been no invasion of a right or that there has been a reasonable mistake of fact made in connection with the invasion of the right, that is so only because the plaintiff in each case sought only monetary damages, and not declaratory or injunctive relief (against which the qualified-immunity doctrine is not a shield, see Torres Rivera v. Calderon Serra, 412 F.3d 205, 212 (1st Cir.2005)). We should not hold or imply, as we are invited to do in our tripartite elaboration of the qualified-immunity analysis, that a government official violates the Constitution when she makes a reasonable but mistaken factual judgment that a particular situation calls for a forceful intervention by her office. The traditional two-step qualified immunity analysis, still employed by the Supreme Court, does not permit this error, for it channels consideration of issues of reasonable mistakes of fact into the initial inquiry: whether there has been an invasion of a federal right. See Brosseau, 543 U.S. at 195, 125 S.Ct. 596.
We should return to the two-step inquiry employed by the Supreme Court.